Rose Brandt, Appellant, v. Lee V. Brandt and I. Val Freedman, Defendants. I. Val Freedman, Appellee.

Gen. No. 38,669.

Opinion filed June 29, 1936.

Owens & Owens, of Chicago, for appellant; Thomas L. Owens and Vincent G. Rinn, of Chicago, of counsel.

Edward W. Rawlins and Eugene P. Kealy, both of Chicago, for appellee; Fay Warren Johnson, of Chicago, of counsel.

Mr. Presiding Justice Matchett delivered the opinion of the court.

January 6, 1932, plaintiff filed a declaration in the superior court of Cook county in an action on the case. She named as defendants thereto her former husband, Lee V. Brandt, and I. Val Freedman. The

declaration was in two counts, the first of which charged that on December 20, 1927, defendants conspired to commit plaintiff to a hospital for the insane unlawfully and improperly; that within the dates of December 20, 1927, and May 14, 1928, they made preparations to carry the conspiracy into effect; that on May 14, 1928, in furtherance of the conspiracy, they caused a sworn petition to be filed in the county court of Cook county, alleging that plaintiff was insane and that her own welfare and that of others required her commitment to some hospital or asylum; that this petition was set for hearing on May 21, 1928, and on that day the county court entered an order quashing the petition; that defendants again, on October 16, 1931, further conspired and on October 20th caused another sworn petition to be filed in the county court, making the same allegations against plaintiff as in the first petition; that on that day, without reasonable or probable cause, she was arrested, taken into custody of an officer and confined in jail in the psychopathic hospital in the county, where she was detained until discharged; that at the hearings which she was compelled to attend, defendants, in furtherance of the conspiracy, appeared and testified; that these hearings were continued until December 1, 1931, when an order was entered by the court quashing the writ and dismissing the petition.

The second count is in the usual form for malicious prosecution without probable cause by reason of the same proceedings set up on the first count. Plaintiff claimed damages in the sum of $100,000. Defendants filed the general issue with certain special pleas. The cause was tried before a jury, and at the close of plaintiff's evidence the court granted a motion by defendant, I. Val Freedman, that the jury be instructed to return a verdict in his favor. The verdict was returned and judgment thereon entered for costs against plaintiff, to reverse which she has prosecuted this ap-

peal to this court. A similar motion made at that time in behalf of defendant Brandt was denied, and evidence in his behalf was thereupon submitted. The jury returned a verdict for plaintiff but on motion of defendant a new trial was granted. As the motion for a directed verdict in behalf of Freedman was made at the close of plaintiff's case and the ruling of the court made at that time, we may not properly consider subsequent evidence. Indeed, we may not properly consider all of that evidence received up to the close of plaintiff's case for the reason that many objections of Freedman as to evidence offered were sustained as to him while overruled as to his codefendant Brandt, and plaintiff has not argued error as to any of the rulings of the trial court in this respect.

The rule of law to be applied upon the submission of a motion of this character is well settled. The ultimate question to be decided upon such motion is whether there is any evidence in the record from which a jury could, acting reasonably in the eye of the law, return a verdict for plaintiff. If there is such evidence, the motion should be denied; if not, then the motion should be granted. *Libby, McNeill & Libby v. Cook,* 222 Ill. 206; *Allen v. United States Fidelity & Guaranty Co.,* 269 Ill. 234; *Devine v. Delano,* 272 Ill. 166; *Ginsberg v. Ginsberg,* 361 Ill. 499.

As the presumption is in favor of the action of the trial court, it is for plaintiff to point out evidence from which the jury could reasonably find in her favor under one of the counts of her declaration, and the ultimate question for our determination here is whether plaintiff has produced such *quantum* of evidence.

The evidence submitted in behalf of plaintiff tends to show that defendant Lee V. Brandt was her husband; that on July 2, 1927, she obtained a decree of divorce from him in the superior court of Cook county for his fault and was awarded the custody of their two

children. By the terms of the decree, Mr. Brandt was to pay plaintiff $9,500, making payments at stated intervals for the support of the children, and to return certain personal effects. Apparently, he did not make such payments. In November, 1927, a petition for rule on him to show cause was filed by plaintiff. The hearing thereon was continued from time to time until February 21, 1928, when an order was entered by the superior court sentencing him to the county jail for contempt of court for six months or until he should purge himself by payment of $6,000 due to plaintiff. This order of commitment was vacated on the same day.

Prior to the divorce proceedings, in 1926 defendant Brandt caused his wife, plaintiff, to be taken to the psychopathic hospital, where she remained about eight days, and following this she went to the North Shore Sanitarium. Again, in 1927, she went to the psychopathic hospital where she was examined and remained about eight days. As a result of the hearing held at that time she was paroled to her father and mother. Plaintiff's testimony is to the effect that at the time she was at the psychopathic hospital in 1926 she saw defendant Freedman in the court room; that he was sitting back of a jury and the judge; she did not know who he was at that time. Her testimony is also to the effect that in 1926 she visited the Mayo Clinic at Rochester, Minnesota, and was examined there for goiter. December 23, 1927, while the proceedings on the petition for rule to show cause for nonpayment of alimony was pending, defendant Freedman went to the home of plaintiff, 3923 Clarendon avenue, Chicago; he told her he was a doctor and had come to see the children; she told him they were not sick and that if they had been she would have called her own doctor.

May 14, 1928, Brandt filed in the county court an application duly verified by him as true to his best

knowledge, information and belief, in which he averred that he believed plaintiff was insane, suffering under mental derangement and unsafe to be at large, and that the welfare of herself and others required her restraint or commitment to some hospital or asylum for the insane. The petition averred that the facts of the case could be proved by Freedman, a regular practicing physician having personal knowledge of said case, by petitioner, and by Mark Sullivan, 4700 Lake Park avenue; that plaintiff had no property; that petitioner prayed that a warrant be issued for her to be and appear at the hearing in accordance with the statute, and that a subpoena be issued for the witnesses named. Attached to this petition is a written statement (Exhibit 1A) signed by Dr. I. Val Freedman, under date of March 28, 1928, in which he certifies that he has been in voluntary attendance on successive occasions upon the person of plaintiff; that about 3 o'clock p. m. December 21, 1927, he called at her address, rang the bell, and although he saw someone behind the curtain of the window, no one answered; that on December 23rd he called again about 9 o'clock a. m. when plaintiff appeared "dressed in an unkempt house-apron, in a state of agitation," and in response to his inquiries said she was Mrs. Brandt; that he told her he came to give medical service to the two little sick girls whom he saw through the door unclean and dirty; that with a series of agitated frowns, alternating pallor and flushing of the face, she said her children were not sick, that when she needed a doctor she would call on him, and in fact would call one that very day; that he persisted that she permit him to enter but she told him to get out, slamming the door in his face; that on January 26, 1928, in Judge Sullivan's court he observed her for about an hour before her case was called, and that "she represented a very fidgety, restless and agitated

mental type, glancing from one side of the court room to the other, paying but little attention to the conversation of a woman companion with whom she sat; her lips muttering constantly as though she were talking to herself; that during the court hearing she insisted upon talking when not spoken to and out of turn; refused to heed the warnings of her attorney to keep quiet; refused to listen to the admonitions of the Judge; fought back suggestions, apparently in her favor, made by both the court and her attorney to do certain things to settle her case and expedite it''; that she seemed surrounded by an air of acute antagonism; that after the court hearing she rushed from the court room like a whirlwind, and after reaching the hall paced up and down with an attitude of defiance to everything and everybody until her own attorney was obliged to calm her and take her down the elevator.

Another statement signed by Dr. I. Val Freedman is to the effect that on February 28, 1928, he again saw plaintiff in Judge Sullivan's court; that she sat against the wall with a short, stout gray-haired man of 50, going through a series of continuous, fidgety, chorea-like movements, smiling and frowning at intervals, apparently as thoughts of scenes and circumstances rushed through her mind, heedless of the desire of her companion to concentrate her attention upon what he might have to say to her; that as he entered the court room and stood at the door, where he remained until court convened, her attention became riveted on him with all the acute animosity and bitterness which facial muscles could show; that during the hearing of her case her attitude was similar to that displayed January 26, 1928, as before described, with a greater display of systematized delusions that she was being deprived of her rights and liberty, especially evidenced when both her attorney

and the court suggested that she sign a receipt for certain papers; that nearly forcible persuasion by her own attorney was required; that she again rushed out of the court; that she went into the hall, snarling defiance, muttering to herself, and spat on a young woman who stood in the hall and for a moment appeared ready to strike her, apparently without reason; that she paced up and down, stood in front of the elevator as though to go up or down, rushed back to one elevator, paced up and down the hall again, and about 30 minutes after the hearing was over she met a man in the hall who appeared to be a bodyguard and a "slugger." A summary attached to the statement is as follows:

"Her entire attitude during these observations has been that of an apparently systematized series of delusions that the world is depriving her of her rights, her goods and peace of mind—denoting a functional mental disorder—who is very vehement in her attitude of discontent with constant complaint of imaginary slights—there seems to be loss of faculty of reasoning because of delusions of pseudo-persecution, brought on by rapid passing of inco-ordinated ideas.

"Considering the above mental state with her history and heredity, I would call her a typical case of paranoid form with a strain of persecutory (dementia) precox."

May 21, 1928 (on motion of plaintiff's attorney, as the record of the county court shows) both the petition and the writ were quashed in proceedings before I. L. Weaver, acting judge.

October 20, 1931, L. V. Brandt again filed a verified petition in the county court in the same form and making the same allegations that were made in the proceeding begun May 14, 1928. Attached to this petition was a certificate of Dr. I. Val Freedman, directed to whom it might concern and stating: "This is to certify that I have examined Mrs. Rose Brandt,

suffering from improper hallucinations, which I deem, in my opinion, to be of a persecutory dementia.''

This matter came up for hearing before Judge Keuren, then acting as Judge of the county court, and an order that the writ of inquisition should be quashed was entered, and the petition dismissed. Evidence was also offered and received tending to show that in March, 1928, after the proceedings for divorce in the superior court of Cook county had been terminated, Freedman visited a neighbor of plaintiff, Mrs. Neal Ray, who lived at 3931 Clarendon avenue, on three different occasions. Mrs. Ray testified that Freedman inquired as to the care plaintiff was giving her children, and that she informed him they were receiving the best of care.

Plaintiff testified that about October 15, 1931, a few days after she had made a visit to the office of defendant Brandt for the purpose of obtaining payments due to her, Freedman came to her home at about 8:30 a. m. and said he had received a call concerning the children; plaintiff asked him what he came there about, and he said, ''Well, Mr. Lee V. Brandt wants the children''; that he then left and a few days later, about 3:30 in the afternoon, several police officers came to her home, served her with a warrant and took her into custody. The police permitted her to call Mr. George Peterson, who drove to a store where plaintiff was in the custody of several police officers. The police took her to the Gale station where she was detained until she was driven in a patrol wagon to the psychopathic hospital about 5:30 in the afternoon; that later, when she appeared in the county court, defendants Freedman and Brandt were present and testified.

Mrs. Anna W. Stuart, a witness for plaintiff and her neighbor, testified that she lived at 917 Cornelia street; that in October, 1931, Freedman came to her home and inquired whether she knew plaintiff and whether

plaintiff was peculiar; that she (witness) answered that she was not; that she was asked whether plaintiff neglected her children, and witness answered, "No, she is a very good mother." Freedman also asked whether the parents of plaintiff had her examined for insanity, and that she (witness) replied, "I know nothing about that, and I cannot think that Mrs. Brandt was insane."

The petition filed October 20, 1931, named plaintiff's father, George Gruehl (who is now deceased) as a witness. Upon examination by the court he stated that his daughter, plaintiff, was not insane.

This is, we believe, a summary of all the evidence submitted in plaintiff's behalf. As already stated, the first count of the declaration charged a conspiracy between these two defendants, the object of which was to have plaintiff declared insane. Her evidence shows there had been two prior proceedings with which, so far as the evidence discloses, Dr. Freedman had nothing whatever to do with the exception that he sat in the court room while the testimony was being heard. It does not appear by whose request he was present or that he testified upon either occasion. The hearings were held in a public place, at which many physicians might naturally desire to be present, and there is certainly no evidence tending to show that Dr. Freedman up to that time conspired with Brandt, or any other person. The evidence indicates that Dr. Freedman became interested in the condition of plaintiff in December, 1927, and afterward in the spring of 1928; that he called at her home; that he visited Judge Sullivan's court room when plaintiff was there for the purpose of making observations. The result of his examinations at plaintiff's home and his observations and conclusions therefrom are set forth in the statements and certificates attached to each of the petitions, one filed May 14, 1928, and the other October 20,

1931, for the purpose of causing an inquiry to be made as to the sanity of plaintiff.

Section 3 of chapter 85 (Ill. State Bar Stats. 1935, p. 2030) provides, in substance, that when any person shall be, or is supposed to be insane, any reputable citizen of the county may file with the clerk of the county court a statement in writing under oath, setting forth that the person is insane and unsafe to be at large, or suffering under mental derangement, and that the welfare of himself and others requires his restraint or commitment to some hospital or asylum for the insane; "the said statement must be accompanied by the names of the witnesses (*one of whom at least must be a physician having personal knowledge of the case*), by whom the truth of the allegations therein contained may be substantiated and proved"; provided, that when it shall appear that the person alleged to be insane has not been examined by a physician, the judge may appoint a qualified physician of the county to make such examination and allow him compensation therefor.

The certificates attached to the petition seem to indicate a proceeding in conformity with the statute and a proceeding which was intended to, and in the natural order of things would, give protection to a person whose sanity was questioned. Dr. Freedman, so far as the evidence discloses, had no ulterior motive. He made statements which would seem to have been required by the statute, in the proper exercise of his professional obligations. He was not asked on this trial whether he was employed by his codefendant to make the examination and observations, concerning which he gave his opinion. The statements were in the nature of evidence required by the statute in a proceeding of this kind, and public policy would seem to require that statements of this kind, made in good faith and without ulterior motives, should be entitled

to the same privilege as other statements made in connection with court proceedings.

Whatever the evidence thereafter may have disclosed, we think that up to the time plaintiff closed her evidence she had entirely failed to produce any facts from which a conspiracy to have plaintiff unjustly declared insane could be inferred. We do not forget that actual proof of conspiracy cannot in the nature of things usually be made, and that often it must be inferred from proof of the acts of the parties and circumstances in connection therewith. *Ochs v. People,* 124 Ill. 399. There is no proof here of such facts and circumstances. Plaintiff cites a number of cases, such as *Smith v. Nippert,* 76 Wis. 86, which hold that one who maliciously and falsely sues out an inquisition of lunacy may be liable to the party injured. There is no question of the law in that respect, which as a matter of fact in this State has been enacted into a statute (Ill. State Bar Stats. 1935, ch. 85, ¶ 28); but that is wholly beside the question. There is no proof here from which a conspiracy can be inferred.

Plaintiff's cause of action under the second count is for malicious prosecution of this action. In order to recover under the second count it was necessary that plaintiff should prove all the elements of such prosecution, as stated in *Glenn v. Lawrence,* 280 Ill. 581. It was necessary to prove that a proceeding was begun; that it was against plaintiff and caused by defendant; that it terminated in favor of plaintiff; that it was begun without probable cause and with malice; and that damage resulted therefrom. The evidence for plaintiff showed the beginning of the proceeding, and that plaintiff here was defendant there, and that the proceeding had terminated in her favor; but the evidence does not disclose that this defendant caused the proceeding to be begun, that there was an absence of

probable cause, or that malice was present. In the absence of proof of these essential elements of the cause of action alleged in the second count, plaintiff could not recover, and defendant was entitled to an instruction as to that count also. Plaintiff had offered no medical testimony as to her actual mental condition up to the. time this order was entered.

The evidence having failed under one count to establish conspiracy, which was of the essence of the action, and under the second count to establish the elements of a cause of action already described, it follows that the court properly instructed the jury to return a verdict for defendants and did not err in ordering judgment to be entered thereon.

For these reasons the judgment of the trial court is affirmed.

*Affirmed.*

McSurely, P. J., and O'Connor, J., concur.