CAROLYN E. CHUDY *v.* DR. AMAIL CHUDY

5-4315                                       420 S. W. 2d 401

Opinion delivered October 30, 1967

[Rehearing denied November 27, 1967.]

*Frances D. Holtzendorff*, for appellant.

*Smith, Williams, Friday & Bowen*, for appellee.

PAUL WARD, Justice. This litigation relates to the immunity of a doctor from liability for certain acts or conduct. To better understand the issue, how it arose, and how it reaches this Court, we set out below a brief summary of the background facts.

On August 19, 1965 Mrs. Carolyn E. Chudy (appellant here) filed suit for a divorce from her husband, Brunan S. Chudy. On August 30, 1965 Dr. Amail Chudy (appellee here, and a brother of Brunan S. Chudy) allegedly signed a false certificate stating appellee was in need of psychiatric treatment. On the same day a hearing was held before the Probate Court relative to the condition of appellee, and the presiding judge or-

dered her to be taken to the Arkansas State Hospital for Nervous Diseases. Appellee was held in said hospital for one day when she was released, on a petition for a writ of habeas corpus, by the Probate Judge.

On November 17, 1965 appellant filed a Complaint, and later an Amended Complaint, in circuit court against appellee wherein she made, in substance, the following allegations:

(a) The defendant wilfully and intentionally made and signed a false statement or certificate, stating that she was psychotic and in need of psychiatric care, at the time appellee knew said statement was false.

(b) Appellee's purpose in making this statement was to have it submitted to the Probate Court in order to have her committed for psychiatric treatment in said hospital, knowing at the time she was not psychotic.

(c) At all times she was "sane and competent and free from psychosis and was not in need of mental or psychiatric care."

(d) Appellee was engaged in a conspiracy with his brother, Brunan S. Chudy, for the purpose of assisting the said Brunan S. Chudy in deterring her in the aforementioned divorce proceedings, and to falsely and unlawfully deprive her of her liberty, and to humiliate, intimidate and embarrass her.

(e) She is the mother of three children who live with her, and she has suffered anxiety, humiliation and embarrassment over said detention and deprivation of her liberty, as well as from public notoriety, and that she will continue to so suffer.

(f) She has suffered compensatory damages in the sum of $100,000 and punitive damages in the sum of $50,000 for which she prays judgment.

To the above complaint appellee filed a Motion for Summary Judgment which was sustained by the trial court, hence this appeal.

It is our conclusion that the complaint states a cause of action, and that the trial court erred in granting the Motion for Summary Judgment. It is well settled by decisions of this Court that the Motion does not lie when material facts are in issue. *Griffin* v. *Monsanto Co.*, 240 Ark. 420, 400 S. W. 2d 492.

If, as alleged, appellee wilfully, knowingly and maliciously executed the false certificate and conspired with appellant's husband to deprive (and did deprive) appellant of her liberty and freedom, causing her to suffer as pleaded, she has a right to recover damages in a court of law.

In the case of *Comfort* v. *Young*, 69 N. W. 1032, Young filed "with the board of insane commissioners . . . charging that plaintiff [Comfort] was and is insane, and a fit subject for custody and treatment in the insane hospital of the state." There it was held the trial court properly instructed the jury as follows:

> " 'The real question for you to determine first in this case is: Was the information made by the defendant and filed by him honestly and in good faith, upon probable cause . . .' "

The case of *Brandt* v. *Brandt*, 3 N. E. 2d, 96, 286 Ill. App. 151, is in point with the above holding that such allegations are matters for the jury to consider. There, plaintiff (appellant) sued her former husband (and others) alleging the defendants "conspired to commit plaintiff to a hospital for the insane unlawfully and improperly." The case was tried by a jury which found appellant had not proved the allegations. On appeal, the Court cited cases which held "that one who maliciously and falsely sues out an inquisition of lunacy may be liable to the party injured." The Court then said:

"There is no question of the law in that respect, . . . but that is wholly beside the question" because there "is no proof here from which a conspiracy can be inferred." Of course, in the case before us, appellant was not even allowed to offer *proof* of her allegations. In accord with the rule above announced are other cases cited in 145 A.L.R. at page 705 et seq.

In reply to the above, and in urging an affirmance of the trial court, appellee makes this statement: "The sole question before the Court in this case is the application of the defense of absolute privilege." In support of that position appellee cites cases which we will examine and which, we think, can be distinguished and are not applicable under the pleadings in the case here under consideration.

(a) *Hurley* v. *Towne et al,* 155 Me. 433, 156 A. 2d 377, is a case where the doctor was *called,* as an expert *witness,* before the committing proceedings, and there the doctor was immune from liability for that reason. In the case before us appellee was not *called* and he was not *a witness.* The court pointed out that "every person shall have a remedy at law for every wrong," but that public policy requires that witnesses shall not be restrained by fear.

(b) *MeZullo* v. *Maletz,* 331 Mass. 233, 118 N. E. 2d 356, was an action based on Tort, where the doctor "was *called upon* to perform an important duty," *i. e.* to sign a certificate of commitment. There the Supreme Court also pointed out that "Plaintiff does not contend that a case at Common Law is made."

(c) *Dyer* v. *Dyer,* 178 Tenn. 234, 156 S. W. 2d 445, is where appellant sued her former husband and two doctors for damages for false imprisonment in the state hospital. The trial court had sustained a demurrer to the complaint. On appeal the Supreme Court affirmed. In doing so, however, the Court said that the statements of appellees "were made in a *judicial proceeding* under

oath, in response to a *call* for their professional opinion and were, therefore, absolutely privileged." (our emphasis) The Court again said that the statements were "responsive to *questions propounded* to the defendant by counsel while being *examined* . . . in a *judicial proceeding* . . .". (our emphasis.)

In the case here under consideration this is the situation: Appellee was not a *witness* in a judicial proceeding and he was not *called* by anyone to make a statement or certificate. He is charged with conspiring with the husband of appellant to have her taken from her home and children and placed in the State Hospital for Nervous Diseases, and is charged with doing so wilfully, falsely, and maliciously to hinder the divorce proceeding and to cause her embarrassment and humiliation. It is our conclusion that appellant has a right to try to prove the allegations in her complaint.

Reversed.

HARRIS, C. J. and BYRD, J., dissent.

JONES, J., not participating.

CONLEY BYRD, Justice, dissenting. I dissent from the majority opinion because I consider the statement made by appellee, Dr. Amail Chudy, in connection with the lunacy proceedings of appellant, Carolyn E. Chudy, to be an absolute privilege given by the courts, not only of this state but of other states. In setting forth my reasons it must be kept in mind that this matter went off in the trial court on a motion for summary judgment after the parties had interchanged interrogations and requests for admissions of fact, and had made certain stipulations regarding the record in the lunacy proceedings.

The amended complaint filed May 6, 1966, concerning the conduct of Dr. Chudy, alleges:

"That at the time herein mentioned, plaintiff was married to defendant's brother, Brunan S. Chudy. That at the time of the acts herein complained of, an action for divorce was pending between the plaintiff and the said Brunan S. Chudy in the Chancery Court of Pulaski County, Arkansas.

"That over a period of time, the plaintiff had been a patient of the defendant for ailments and illnesses which were not of a serious nature, but had not consulted with the defendant in a professional capacity since the forepart of July, 1965, at which time she visited at defendant's office for the purpose of having her leg x-rayed for a physical ailment from which plaintiff in the past had suffered.

"That on August 30, 1965, the defendant wilfully and intentionally made and signed a false statement or certificate, stating that plaintiff was psychotic and in need of psychiatric care, and at the time of making such statement, the defendant had knowledge that such statement or certificate was wilfully false.

"That defendant's purpose in making the statement referred to above was to submit or have the statement submitted to the Probate Court of Pulaski County, Arkansas, in order to have plaintiff committed for psychiatric treatment in the Arkansas State Hospital for Nervous Diseases, knowing that plaintiff was not insane or psychotic at the time of making such statement.

"That as a result of defendant's wilful and false diagnosis of her condition, on August 31, 1965, she was picked up at her home by two deputy sheriffs of Pulaski County, Arkansas, and without her consent and over her protest and against her will, she was taken by said deputies into custody and incarcerated in the Arkansas State Hospital for Nervous Diseases, where she was detained further against her will all the remaining portion of that day, over night and until the afternoon of

the next day, namely, September 1, 1965, at which time she was released by virtue of a hearing and court order of the Pulaski Chancery Court.

"That at all times, the said Carolyn E. Chudy was sane and competent and free from psychosis and was not in need of mental or psychiatric care.

"That the defendant wilfully, falsely caused plaintiff to be deprived of her liberty and detained without just cause.

"That the defendant was engaged in a conspiracy with his brother, Brunan S. Chudy, for the purpose of assisting the said Brunan S. Chudy in deterring plaintiff in the divorce proceedings between them and to falsely and unlawfully deprive plaintiff of her liberty and to humiliate, intimidate and embarrass her.

"That the wilful, intentional and false conduct upon the part of the defendant was the proximate cause of plaintiff's injuries and damages hereinafter described."

The false statement mentioned in the amended complaint was on file in the lunacy proceedings and was made part of the record here by stipulation of counsel. It provides:

"TO WHOM CONCERNED:

> Re: Mrs. Brunan S. (Carolyn) Chudy
> Our File: Chart No. 1267

After conversation by telephone on August 30, 1965 and considering the many factors regarding the mental status of the above named patient, it is our feeling that she should be under psychiatrist care. Sincerely,

/s/ Amail Chudy, M.D."

Our statute on application for commitment of dangerous patients to the State Hospital is Ark. Stat. Ann. § 59-234 (Supp. 1965). It provides:

"If at any time the Superintendent shall determine that any patient admitted to the State Hospital under any provision of this Act [§§ 59-299—59-242] is dangerous to himself or to society, the Superintendent shall request a writ of commitment from the Probate Court of the County in which the patient lives. This request for commitment shall be accompanied by a certificate from the medical staff of the State Hospital setting forth the facts as to the patient's mental condition and that he or she is dangerous to himself or to herself, or to society. The Superintendent may also request a writ of commitment for any patient for whom he deems it to the best interest of the patient that such a writ be issued, for the purpose of detaining the patient in the hospital for such time as the Superintendent deems necessary for proper care and treatment. In such cases the presence of the patient before the Court need not be required. If any Health Officer, or any practicing physician, regularly licensed by the state of Arkansas, believes that any person residing in the county, who is not a patient in the State Hospital, is so suffering from mental disease as to be dangerous to himself or to soci y and such person cannot be taken peaceably to the State Hospital as provided in other Sections of this Act, then such Health Officer or physician shall certify this fact to the Judge of the Probate Court of such county for a hearing, copies of such certification to be delivered to the person affected thereby, or to his guardian, or to his nearest relative, if any, whereupon said court shall hold a hearing either in regular term or in vacation in chambers, receiving such evidence as may be offered by all parties interested, after which he shall, if the evidence justifies, issue an order of commitment to the State Hospital. In such cases the presence of such person before the Court need not be required.

"Any patient in any public or private hospital in this State which maintains facilities especially designed for the care and treatment of the mentally ill, and which is approved and licensed by the State Board of Health, may be detained in said hospital for diagnosis, care and treatment of any mental disorder, including acute psychosis induced by alcoholism or drug addiction, or, at the discretion of the government (governing) head or board of any such hospital, may be admitted for such service, provided a regularly practicing psychiatrist duly licensed by the State of Arkansas shall certify in writing to such hospital that such patient is suffering from psychosis and that the patient is likely to be harmful to himself, herself or society. A patient so detained by or admitted to any hospital described in this section may be confined to the premises of such hospital until such time as a regularly practicing psychiatrist licensed by the State of Arkansas shall certify in writing to such hospital that the patient is no longer harmful to himself, herself or society.

*"No action shall be brought against any hospital described in this Section, nor against its governing body or the members thereof, nor against its superintendent, administrator, agents, representatives, servants and employees, nor against any nurse or physician who confines and detains, or who aids in the confinement and detention, of any patient in the manner prescribed by this section, to recover damages therefor or incident thereto; provided that the immunity herein granted shall not be held to extend to any person who shall wilfully make and sign a false certificate to a hospital that a person is suffering from psychosis nor to any one who confines or detains a person in a hospital with knowledge that any such certificate is wilfully false.*

"Probate Courts in this State shall have, and are hereby granted, the same jurisdiction and authority to commit persons to any private hospital in this State equipped to care for persons suffering from psychosis,

as in this Section above set forth, as they may now or hereafter be empowered by law to commit to the State Hospital; provided any such private hospital be willing to accept and care for patients so committed to it. A patient so committed to a private hospital by the Probate Court may be discharged therefrom upon a written certificate by a regularly practicing psychiatrist duly licensed by this State, that he is no longer harmful to himself, herself or to society, or when transferred, by order of the Probate Court which committed the patient, to another hospital or institution, or when discharge of said patient shall be ordered by said Probate Court or other Court having jurisdiction.

"Nothing in this Section shall be construed to prevent voluntary entry by patients in and their admissions to public and private hospitals by applications of the patients or others in their behalf. [Acts 1943, No. 241, § 6, p. 498; 1957, No. 413, § 2, p. 1151; 1961, No. 77, § 1, p. 175.]" (Emphasis supplied.)

The history of the foregoing statute shows that it was enacted in parts, the first paragraph having been a portion of Act 241 of 1943 and the subsequent paragraphs enacted as amendments thereto. The italicized paragraph, which recognizes the liability of doctors who make wilfully false statements, refers to situations where a patient is in a public or private hospital and is retained there on a doctor's letter or certificate without benefit of a lunacy inquest.

The first paragraph of the statute makes it clear that Dr. Chudy's statement did not provide a sufficient basis on which the probate court could legally have issued an order of commitment, because the letter certainly does not state that Mrs. Chudy was dangerous to herself or to society. Not only is it obvious that the doctor's statement was made for use of the probate court in connection with Mrs. Chudy's lunacy inquest, but Mrs. Chudy in her complaint alleges that defend-

ant's purpose in making the statement was to submit or have the statement submitted to the probate court. Therefore, as will be seen by our decisions hereinafter discussed, Dr. Chudy's statement comes under the absolute privilege given to relevant or material statements made in testimony, pleadings, or other papers in judicial proceedings.

In *Johnson* v. *Dover*, 201 Ark. 175, 143 S. W. 2d 1112 (1940), we had before us a suit for slander based on a statement a witness had made in court. In upholding the witness's statement as a privileged communication for which an action did not lie, we pointed out that the general rule of American cases is that statements made by a witness in the regular course of a judicial proceeding are absolutely privileged where they are relevant and pertinent to the subject of inquiry, even though false or malicious.

Recovery for defamation against physicians for similar statements made in lunacy inquests has been denied in *Gilpin* v. *Tack*, 256 F. Supp. 562 (W. D. Ark. 1966); *Fisher* v. *Payne*, 93 Fla. 1085, 113 So. 378 (1927); *Dunbar* v. *Greenlaw*, 152 Me. 270, 128 A. 2d 218 (1956); *Mezullo* v. *Maletz*, 331 Mass. 233, 118 N. E. 2d 356 (1954); and *Jarman* v. *Offutt*, 239 N. C. 468, 80 S. W. 2d 248 (1954). See Annot., 73 A.L.R. 2d 333 § 7 (1960).

Thus it is seen that appellant's only complaint against Dr. Chudy concerns the statement he made for use in the lunacy inquest. The doctor's statement is certainly relevant and pertinent to the issue that was before the trial court and, under the adjudicated cases of this and other courts as set out above, was a privileged communication upon which no action for defamation can lie.

The majority makes much of appellant's allegation that Dr. Chudy conspired with appellant's husband to deprive her of her liberty and freedom, which is a charge in the nature of malicious prosecution. The ma-

jority opinion in this connection fails to consider the effect of the discovery proceedings. When the discovery proceedings had by the parties are considered, it is obvious that the only fact upon which appellant relies for recovery against Dr. Chudy is his making of the written certificate for use in the lunacy inquest as required by the statute.

Under Ark. Stat. Ann. § 59-234, *supra,* a person can not be committed to the State Hospital except on the certification of a regularly licensed physician that the person "is so suffering from mental disease as to be dangerous to himself or to society and such person cannot be taken peaceably to the State Hospital." As a practical matter, doctors do not make such certifications except on the request of some member of the person's family. A physician who makes such certification is always susceptible to the allegation that he conspired with some member of the family to deprive the person of his liberty without just cause. Consequently, every doctor making such certification, after today's majority opinion, will place himself in the position of having to defend his action in court against the accusation of conspiracy.

Therefore I would sustain the motion for summary judgment on the basis as alleged in the amended complaint that it was a statement submitted to the probate court of Pulaski County, Arkansas, in accordance with our lunacy statute, Ark. Stat. Ann. § 59-234, and is therefore privileged.