VICTOR JULIAN et al., Plaintiffs-Appellants, v. RONALD SPIEGEL et al., Defendants-Appellees.

Second District   No. 84—0585

Opinion filed July 18, 1985.

Bruce A. Heidecke, of Heidecke Law Offices, of Westmont, for appellants.

Stephen R. Swofford and Mark D. Pera, both of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Robert N. Caffarelli, of Boodell, Sears, Giambalvo & Crowley, and Greg A. Kinczewski, all of Chicago, and Frank B. May, Jr., of Oak Brook, for appellees.

JUSTICE LINDBERG delivered the opinion of the court:

Plaintiffs, Victor Julian (Victor) and Grace Julian (Grace) appeal from an order of the circuit court of Du Page County which directed a finding in favor of defendants, Ronald Spiegel (Ronald) and Sandra Spiegel (Sandra) on plaintiffs' action for rescission of their real estate contract. Plaintiffs assert the trial court erred in concluding that the evidence failed to establish a *prima facie* violation of the Consumer Fraud and Deceptive Business Practices Act (the Act) (Ill. Rev. Stat. 1983, ch. 121½, par. 261 *et seq.*). Because we conclude the trial court's order was not contrary to the manifest weight of the evidence, we affirm.

Plaintiffs filed on August 11, 1983, a two-count complaint seeking rescission of their contract to purchase a single-family ranch-style house located in Oak Brook, owned by defendants. Both counts were predicated on allegations that defendants' agents misrepresented to plaintiffs that the house contained a full basement. Count I was based upon common law fraud, while count II alleged a violation of the Act. Ill. Rev. Stat. 1983, ch. 121½, par. 262.

According to the evidence adduced at trial, plaintiffs during June 1983 were considering the purchase of a new house. While driving through Oak Brook in early June 1983, Victor testified, plaintiffs became interested in one house located down the street from defendants' residence and telephoned the offices of intervening defendant-appellee Coldwell Banker Residential Real Estate Services of Illinois, Inc. (Coldwell Banker), whose sign was posted on the lawn. Mehri Briant (Briant), a real estate broker employed by Coldwell Banker, showed plaintiffs the house, and after they expressed little interest, telephoned them several days later requesting that they view defendants' house. Defendants' house was offered on the market pursuant to an exclusive listing agreement with intervening plaintiffs, counterdefendants and appellees John Brennan and Barbara Brennan, d/b/a RE/Max of Naperville (RE/Max). Nancy Schaaf, a broker with RE/Max, acted as the listing broker for the sale of defendant's house. Accepting the invitation from Briant, plaintiffs met her at defendants' house and inspected each room in the house on the main floor except for two bedrooms, because the doors to those rooms were closed. Victor also walked down the stairs to the basement, but because he and Briant were unable to locate the light switch, Victor testified, they could not view the entire basement area. According to plaintiffs' exhibit No. 6, the basement area includes a 31.31-foot south wall, a 33.36-foot east wall, a 26.20-foot north wall, and an irregular west wall totaling approximately 32.13 feet. However, the basement comprises only about one-third of the entire square footage of the main floor, with the remaining area occupied by a crawl space.

After completing the inspection, plaintiffs within several days submitted a written offer to purchase the property, which after several additional days of negotiation on the matter of price, was accepted in writing by plaintiffs. Plaintiffs thereafter immediately left Illinois for a two-week Florida vacation. Upon their return, plaintiffs again visited the subject house and, according to Victor's testimony, only then learned that the house contained a basement which did not extend the entire length and width of the main floor. Knowledge of this fact, plaintiffs allege, prompted them to seek rescission of the contract and repayment of their $30,000 earnest-money deposit. In response, defendants elected to retain the earnest money as liquidated damages pursuant to paragraph No. 18 of their contract with plaintiffs.

Plaintiffs thereafter filed suit, and at the close of their case in chief, defendants made a motion for directed findings as to count I and II of plaintiffs' complaint. The trial court granted defendants' motion as to count II, but denied a directed finding as to count I predi-

cated on common law fraud. Defendants thereafter proceeded with their case in chief. At the close of defendants' evidence, the trial court entered judgment on May 22, 1984, in favor of defendants as to count I, finding that "[t]he JULIANS had both the obligation and opportunity to investigate the basement area." As to count II, the trial court found that "[t]he JULIANS failed to produce evidence in their case in chief to maintain a cause of action under the Illinois Consumer Fraud and Deceptive Business Practices Act." Plaintiffs did not submit a post-trial motion, but did file a timely notice of appeal on June 20, 1984.

■■ The only question raised by this appeal is whether the decision of the trial court directing a finding in favor of defendants is contrary to the manifest weight of the evidence. (*International Harvester Credit Corp. v. Helland* (1985), 130 Ill. App. 3d 836, 474 N.E.2d 882; *Proctor v. Handke* (1983), 116 Ill. App. 3d 742, 452 N.E.2d 742; see Ill. Rev. Stat. 1983, ch. 110, par. 2—1110.) In entertaining a motion for a directed finding during a non-jury trial, the trial court must employ a two-step analysis. First, the trial court must determine if the plaintiff has made out a *prima facie* case (*i.e.*, has presented at least some evidence on every element necessary to his cause of action). (*Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 154-55.) Failure to introduce such evidence warrants a directed finding in favor of the moving party. (*Kokinis v. Kotrich* (1980), 81 Ill. 2d 151.) If some evidence is introduced on each element, then the trial court in its role as fact finder is required to weigh the plaintiff's evidence, and if the weighing process negates some of the evidence necessary to the plaintiff's *prima facie* case, then the court should grant the defendant's motion and enter judgment in its favor. (*Kokinis v. Kotrich* (1980), 81 Ill. 2d 151.) The supreme court has described this weighing requirement in the following terms.

> "This weighing process may result in the negation of some of the evidence necessary to the plaintiff's *prima facie* case, in which event the court should grant the defendant's motion and enter judgment in his favor. On the other hand, if sufficient evidence necessary to establish the plaintiff's *prima facie* case remains following the weighing process, the court should deny the defendant's motion and proceed as if the motion had not been made." 81 Ill. 2d 151, 155.

Defendants imply that, in determining whether the trial court's order is contrary to the manifest weight of the evidence, this court is free to consider any evidence in the record which supports the trial court's judgment, including evidence introduced in defendants' case in

chief on the common law fraud count, even though such evidence was admitted after the trial court had directed a finding on the statutory count. As support for that conclusion, defendants cite *Cartwright v. Garrison* (1983), 113 Ill. App. 3d 536, 447 N.E.2d 446, and *Rome v. Commonwealth Edison Co.* (1980), 81 Ill. App. 3d 776, 401 N.E.2d 1032, for the general proposition that a judgment of the trial court may be sustained on any basis in the record regardless of the actual basis for the trial court's decision. Neither *Cartwright* nor *Rome*, however, involved a factual situation similar to the one present here, where evidence introduced on a *different* but related count was admitted *after* the court had directed the finding on the other count. Rather, *Cartwright* involved an appeal from an order dismissing the complaint in its entirety, and, in *Rome*, both counts were dismissed but only one was appealed and no evidence was presented to the trial court after the counts were dismissed. Because, in both *Cartwright* and *Rome*, no evidence was received following the order from which the appeal was taken, neither case fairly stands for the proposition that this court can properly consider, as support for the order directing a finding on count II, evidence which was subsequently introduced on the separate but related count I predicated on common law fraud.

The parties have not cited and our research has not disclosed a decision in Illinois discussing whether a reviewing court can consider, in support of a directed finding, evidence on a separate but related count introduced after the finding is directed. In determining the correctness of a directed verdict on one count, however, the court in *McMillen v. Carlinville Area Hospital* (1983), 114 Ill. App. 3d 732, 450 N.E.2d 5, considered whether it could review evidence on a separate but related count introduced after the trial court had directed the verdict. In *McMillen*, the patient sued the hospital asserting in count I a theory of *res ipsa loquitur* and in count II a theory of ordinary negligence. At the conclusion of the plaintiff's evidence, the trial court directed a verdict in favor of the defendant on the *res ipsa loquitur* count. After the close of defendant's case in chief, the negligence count was submitted to the jury, which returned a verdict in favor of the hospital. In determining what evidence it could consider on the appeal solely from the directed verdict, the *McMillen* court stated:

> "Since the directed verdict came at the close of the plaintiff's evidence and since the plaintiff has not appealed the verdict of the jury on count II, we must view the evidence as it existed at the time of the trial court's ruling. The jury's verdict cannot be used to support that ruling; it was not in existence at the time." 114 Ill. App. 3d 732, 733, 450 N.E.2d 5, 7.

Because *McMillen* procedurally is similar to the case at bar, its conclusion is relevant to our inquiry here. Plaintiffs here, as did the plaintiff in *McMillen*, brought suit on two counts alleging two separate but similar theories of liability. In both cases, the trial court directed judgment on one count at the close of the plaintiff's case, allowed the remaining count to proceed, and ultimately the trier of fact resolved that count in favor of the defendant. As was true in *McMillen*, plaintiffs here did not appeal the judgment on the surviving count, which was resolved by the trier of fact after hearing all the evidence, but rather only appealed the trial court's order directing judgment on one count at the close of plaintiffs' case. While we recognize the standards for a directed verdict (see *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494) and for a directed finding (see *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151) are different, nevertheless we believe the *McMillen* court's limitation of its scope of review solely to the evidence which had been presented prior to entry of the directed verdict is persuasive support for consideration in the case at bar only of plaintiffs' evidence introduced prior to entry of the directed finding. The correctness of the trial court's ruling should be determined based upon the evidence which was before the court when it made its ruling and not by consideration of evidence later introduced on a separate but related count. (*C.f. Miller v. Illinois Central R.R. Co.* (1946), 328 Ill. App. 171, 65 N.E.2d 597, *aff'd on other grounds* (1946), 395 Ill. 273; *Brandt v. Brandt* (1936), 286 Ill. App. 151, 3 N.E.2d 96.) Accordingly, in our determination whether the trial court's order was against the manifest weight of the evidence, we base our conclusion upon the evidence presented by plaintiffs in their case in chief prior to the trial court's entry of the directed finding. We note that plaintiffs accommodated the schedule of Sandra by allowing her to testify out of turn during plaintiffs' case in chief. Because Sandra's testimony was presented as part of defendants' case in chief, we do not consider it in resolving the issue presented by this appeal.

Despite the well-reasoned arguments of the parties concerning other elements of the Act, we believe that section 10b(4), which was in effect at the time that the parties' entered into their real estate contract, is all that is necessary for disposition of the issue presented.[1] That section provides:

"Sec. 10b. Nothing in this Act shall apply to:

---

[1]Because of the manner in which we resolve this appeal, we do not reach the question whether, on the facts of this case, the description of the house is containing a full basement constitutes a misrepresentation.

* * *

(4) The communication of any false, misleading or deceptive information, provided by the seller of real estate located in Illinois, by a real estate salesman or broker licensed under 'The Real Estate Brokers Licnese Act,' unless the salesman or broker knows of the false, misleading or deceptive character of such information." (Ill. Rev. Stat. 1983, ch. 121½, par. 270b(4).)

Where a party seeks a statutory remedy, the remedy may only be enforced in a manner prescribed in the statute. (*Toms v. Lohrentz* (1962), 37 Ill. App 2d 414, 185 N.E.2d 708.) As an element of their *prima facie* case, plaintiffs were required to establish that the Act upon which their cause of action was predicated afforded them a remedy.

The uncontradicted evidence introduced in plaintiffs' case in chief through the testimony of Victor established that he never spoke directly with defendants about the basement prior to signing the contract. In order to establish the applicability of the Act, therefore, plaintiffs were required to present evidence that defendants were not the source of the information communicated to plaintiffs through the brokers. According to the allegation in plaintiff's complaint, the alleged misrepresentations were communicated to plaintiffs in three forms: (1) the listing sheet given to plaintiffs by Briant prior to their first inspection of the house and introduced as plaintiffs' exhibit No. 3; (2) the computer printout appended by a Coldwell Banker employee to plaintiffs' real estate contract immediately prior to plaintiffs' signing of the contract and introduced as plaintiffs' exhibit No. 4; and (3) oral representations made by Briant to plaintiffs immediately prior to and during their first inspection of the premises. In these written and oral communications, the only misrepresentation asserted by plaintiffs is that the house was described as containing a full basement. Despite the allegations in plaintiffs' complaint, however, plaintiffs did not establish that defendants were not the source of the description of the basement in the two written exhibits and in Briant's oral representations. To the contrary, the only reasonable inference capable of being drawn from the evidence is that plaintiffs' exhibit No. 5, the listing sheet given to defendants when they purchased the house in 1972 and which was supplied by defendants to RE/Max when defendants listed the house for sale, was the source of the information contained in plaintiffs' exhibits Nos. 3 and 4. Likewise, the only reasonable inference supported by this record is that plaintiffs' exhibit No. 5 provided the basis for Briant's statements to plaintiffs during the

inspection of the house. In fact, plaintiffs at trial sought to link defendants with RE/Max and Briant by eliciting testimony from Nancy Schaaf, the RE/Max listing broker, that Ronald provided her with plaintiffs' exhibit No. 5. Although called to testify during plaintiffs' case in chief, Schaaf was never asked how she obtained the information which she used in plaintiffs' exhibits Nos. 3 and 4. Because neither Schaaf nor any of plaintiffs' other witnesses ever testified that the information concerning the basement was obtained from any source other than from defendants, the only reasonable inference that can be drawn from plaintiffs' evidence is that both plaintiffs' exhibits Nos. 3 and 4 were derived from plaintiffs' exhibit No. 5 provided to RE/Max by Ronald.

Similarly, although plaintiffs asserted that they relied on the oral representations that the house contained a full basement made by Briant during plaintiffs' initial inspection, the only testimony presented in plaintiffs' case in chief supports the reasonable inference that Briant relied upon plaintiffs' exhibit No. 3 in describing the basement. Victor testified that Briant handed him plaintiffs' exhibit No. 3 immediately prior to the first inspection of the house. At about the same time, Victor testified, Briant stated the house contained a full basement. In addition, Victor's testimony suggests Briant could not have based her description of the basement in question upon her personal inspection of the basement that day. While stating that both he and Briant attempted to view the basement, Victor testified their inability to locate the light switch precluded him from seeing the dimensions of the basement, and no testimony in plaintiffs' case in chief suggests that Briant was able to see the basement in the dark any more clearly than was Victor. Briant was never called to testify during plaintiffs' case in chief, and thus no testimony was adduced before the trial court prior to its ruling on the motion for the directed finding that Briant personally inspected the basement. Based upon the evidence introduced by plaintiffs, the only reasonable inference capable of being drawn from the record was that Briant based her description of the basement on the listing sheet—plaintiffs' exhibit No. 3—which in turn the record suggests was derived from information supplied to RE/Max by defendants.

■ Because the only reasonable inference capable of being drawn from plaintiffs' evidence is that both the written and oral representations cited by plaintiffs were premised upon information supplied by defendants, plaintiffs according to the language of section 10b(4) were required to establish the applicability of the Act through testimony that the broker knew of the misrepresentative

character of the information conveyed to plaintiffs concerning the basement. (See Ill. Rev. Stat. 1983, ch. 121½, par. 270b(4).) The testimony offered in plaintiffs' case in chief however, permits no reasonable inference that either Briant or Schaaf knew of the misrepresentative character of the information describing the basement as full. Briant did not testify in plaintiffs' case in chief, and Schaaf offered no testimony during plaintiffs' case that she personally inspected the basement. While Victor testified that he and Briant attempted to inspect the basement, he stated that he could not see the basement because they could not find the light switch. Based upon the evidence presented in plaintiffs' case in chief, the only reasonable inference evident from the record developed prior to entry of the directed finding is that neither Briant nor Schaaf knew of the allegedly misrepresentative character of the description of the basement as full. Plaintiffs therefore failed to establish an element of their *prima facie* case—the applicability of the Act—and thus, the trial court's order directing a finding in favor of defendants was not against the manifest weight of the evidence.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

UNVERZAGT and SCHNAKE, JJ., concur.