**MORTGAGE ASSOCIATES, INC., a Rhode Island Corporation, Plaintiff,**

v.

**Max CLELAND, Administrator of Veterans' Affairs, Defendant.**

No. 79C 359.

United States District Court, N. D. Illinois, E. D.

June 18, 1980.

David S. Kreisman, Oakbrook, Ill., for plaintiff.

Ed Moran, Asst. U. S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION

*Cross-Motions For Summary Judgment*

MAROVITZ, District Judge.

Plaintiff Mortgage Associates, Inc. brings this action against defendant Max Cleland, Administrator of Veterans' Affairs (the "Administrator"), alleging, *inter alia*, that the Administrator is liable to it on a loan guaranty contract executed pursuant to the Veterans' Home Loan Program, 38 U.S.C. §§ 1801–1827, in the amount of $10,366.16. The jurisdiction of the Court is invoked pursuant to 38 U.S.C. § 1820. Pending before the Court are cross-motions for summary judgment. Fed.R.Civ.P. 56. The material facts of this action are undisputed and, therefore, this action is ripe for summary judgment. For the reasons set forth below, the Court grants the Administrator's motion for summary judgment and denies the plaintiff's motion for summary judgment.

Plaintiff loaned $21,200.00 to Benjamin Swanson, a veteran, and Roberta Swanson, his wife, to purchase a home. The loan was evidenced by a note and secured by a mortgage on the property and a guaranty contract executed by the Administrator. Thereafter, the Swansons defaulted on their obligation under the note. Plaintiff notified the Administrator of the default and initiated an action to foreclose on the mortgage. *Mortgage Associates, Inc. v. Swanson*, 77 CH 210 (Ill.Cir.Ct., filed June 14, 1977). In that action, a decree of foreclosure and sale was entered on August 23, 1977. Plaintiff scheduled a public sale of the subject property for September 26,

1977, and on September 13, 1977 notified defendant of the scheduled sale. On September 22, 1977, plaintiff's counsel received notice by telephone from the Administrator that the "specified amount"[1] with respect to the sale of the subject property was $17,650.00. At the September 26 sale, plaintiff, the sole bidder at the sale, inadvertently bid the full amount of the Swanson's indebtedness, $24,671.54.

Thereafter plaintiff submitted a claim to the Administrator for the amount of the Swansons' indebtedness, minus $17,650.00, and sought to convey the subject property to defendant for $17,650.00. Upon discovering that plaintiff had bid the full amount of the Swansons' indebtedness at the September 26 sale, the Administrator advised plaintiff that the debt was discharged and that plaintiff had no option to convey the subject property to the Administrator. Plaintiff then successfully moved to vacate the September 26, 1977 sale and scheduled another sale of the property for November 21, 1977. The Administrator received timely notice of the scheduled November sale. At the November 21 sale plaintiff, again the sole bidder present, bid $17,650.00.

Plaintiff then again submitted a claim to the Administrator for the amount of the Swansons' indebtedness, minus $17,650.00, and sought to convey the property to the Administrator. The Administrator again refused to pay on plaintiff's claim, contending that the September 26 sale had irrevocably fixed the rights of all concerned parties. However, defendant did ultimately accept conveyance of the property from plaintiff. *See* 38 C.F.R. § 36.4320.

The broad purposes of the Veterans' Home Loan Program are "to enable veterans to obtain loans and to obtain them with the least risk of loss upon foreclosure, to both veteran and the Veteran's Administration as guarantor of the veteran's indebtedness." *United States v. Shimer*, 367 U.S. 374, 383, 81 S.Ct. 1554, 1560, 6 L.Ed.2d 908 (1961). Questions arising under the Veterans' Home Loan Program are governed by federal law. *Id.* at 381, 81 S.Ct. at 1559.[2] Action taken by the Administrator pursuant to the Veterans' Home Loan Program is not subject to judicial reversal unless clearly erroneous or in excess of the Administrator's authority. *Id.*

Under the regulations duly promulgated by way of the notice and comment procedures set forth in the Administrative Procedure Act (the "APA"), 5 U.S.C. §§ 551–59, 701–06, the Administrator is not required to specify the minimum amount to be credited to a veteran's indebtedness as a result of a foreclosure sale. However, the Veterans' Administration Lender's Handbook (the "Handbook") provides that the Administrator, upon receipt of timely notice of a foreclosure sale, shall notify the lender in writing either of the amount specified or that no amount will be specified.

In the instant action, it is the Administrator's position that the first sale irrevocably fixed the rights of the Administrator and plaintiff, and, therefore, since plaintiff bid the full amount of the Swansons' indebtedness at the first sale, plaintiff has no right of recovery against the Administrator on the guaranty contract. Moreover, the Administrator contends that he did not violate any applicable regulation because, he ar-

1. Under the regulatory scheme of the Veterans' Home Loan Program, when an amount is specified by the Administrator, that amount is the minimum amount which the Administrator will credit to the veteran's indebtedness. 38 C.F.R. § 36.4320. If the lender bids the specified amount at the sale and is the successful bidder, he shall have the option to convey the property to the Administrator. If the property is sold for an amount in excess of the amount specified, the sale price shall be credited to the veteran's indebtedness, and if the lender is the successful bidder he shall not have the option

to convey the property to the Administrator. In this manner, the regulations seek to protect the interests of the veteran, the Administrator, and the lender.

2. To the extent the relevant body of federal law is silent on questions arising under the Veterans' Home Loan Program, the courts are free to fashion federal law by borrowing state law principles which will further federal concerns. *See, e. g., United States v. Terrey*, 554 F.2d 685, 692 (5th Cir. 1977).

gues, he is only bound to observe those regulations promulgated pursuant to the APA's procedures.

 The Court begins by noting its agreement with the Administrator that certain common law principles of guaranty contract law should be generally applicable to Veterans' Administration guaranty contracts executed pursuant to the Veterans' Home Loan Program. Specifically, a guaranty of payment which is conditioned upon the occurrence of certain events does not obligate the guarantor unless and until those events occur. *E.g.*, 38 Am.Jur.2d *Guaranty* § 74. Further, the terms of a guaranty contract are to be strictly construed in favor of the guarantor. *E.g.*, *Vilter Manufacturing Co. v. Loring*, 136 F.2d 466, 468 (7th Cir. 1943) (applying Illinois law). Moreover, the Court acknowledges that in the event of more than one foreclosure sale the Veterans Administration has in the past interpreted the pertinent regulations to irrevocably fix the rights of the Administrator and the lender according to the terms of the first sale. V.A.Op.Sol. # 122–51 (1951). That interpretation is deserving of considerable deference by this Court. *Standard Oil Co. v. Department of Energy*, 596 F.2d 1029, 1055 (Em.App. 1978). That the first sale should generally fix the rights of the parties is a rule which is supported by the Administrator's interest in administrative ease and the Administrator's and veteran's interest in finality.

However, the Court disagrees with the Administrator to the extent that he contends that the foregoing principles necessarily resolve the issues raised by this action. As stated above, the Handbook provides that once the Administrator receives timely notice of a foreclosure sale, as he did in the instant case, he shall notify the lender in writing either what the amount specified is or that no amount shall be specified. This the Administrator concededly did not do. By way of explanation, the Administrator simply asserts that he is not legally bound to observe the Handbook's requirements.

 The Administrator's view, however, with respect to his obligation to abide by the requirements of the Handbook is plainly erroneous. By publishing the Handbook and encouraging lenders such as plaintiff to rely upon its contents, the Administrator must abide by its provisions. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265–67, 74 S.Ct. 499, 502–03, 98 L.Ed. 681 (1954); *Guardian Federal Savings & Loan Association v. Federal Savings & Loan Insurance Corp.*, 589 F.3d 658, 66–67 (D.C. Cir. 1978); *Bray v. United States*, 515 F.2d 1383, 1394–95, 207 Ct.Cl. 60 (1975); *Smith v. Resor*, 406 F.2d 141, 145 (2d Cir. 1969); *Estrada v. Hills*, 401 F.Supp. 429, 437–38 (N.D. Ill. 1975); *United States v. Leichtfuss*, 331 F.Supp. 723, 724 (N.D. Ill. 1971). Accordingly, the Handbook serves as a limitation upon the scope of the Administrator's discretion as established by 38 C.F.R. § 36.4320.

 Notwithstanding, the fact that the Administrator's action was infected with a failure to observe one of his own rules is not alone sufficient to compel the Court to reverse the action of the Administrator in favor of the party adversely affected. Rather, it appears clear to the Court that there must be some material nexus between the Administrator's violation of his regulation and the administrative action under review. Stated differently, the Court finds that a party seeking to overturn administrative action on the basis of an administrative body's failure to abide by one of its own rules must establish that he was in some way prejudiced by the regulatory violation. It is administrative action taken *pursuant* to the administrative body's failure to follow its own procedures that constitutes an abuse of discretion. *Cf. United States v. Heffner*, 420 F.2d 809, 811–12 (4th Cir. 1969). In the instant case, the record reveals that plaintiff was not prejudiced by the Administrator's failure to furnish it with a writing indicating either what the amount specified was or that no amount would be specified. The Administrator's failure to comply with the Handbook in no way brought about plaintiff's bid in the

first sale. Plaintiff admits that it was actually aware of the amount specified prior to the first sale and has not suggested how the Administrator's observance of the Handbook could have caused it to bid differently than it did. Indeed, plaintiff states that the bid made at the first sale was the product of its own negligence. In short, the Administrator's decision to declare his and plaintiff's rights fixed according to the terms of the first sale is not subject to reversal by reason of the Administrator's failure to adhere to the provisions of the Handbook.

Accordingly, judgment shall enter in the Administrator's favor and this action is hereby dismissed.