**MORTGAGE ASSOCIATES, INC.,
Plaintiff-Appellant,**

v.

**Max CLELAND, Administrator of Veterans' Affairs, Defendant-Appellee.**

No. 80–2152.

United States Court of Appeals,
Seventh Circuit.

Argued April 1, 1981.

Decided July 2, 1981.

David S. Kreisman, Oak Brook, Ill., for plaintiff-appellant.

Edward Moran, Asst. U. S. Atty., Frederick H. Branding, Asst. U. S. Atty., Chief, Civ. Div., Chicago, Ill., for defendant-appellee.

Before CUMMINGS, Circuit Judge, GIBSON, Senior Circuit Judge,* and CUDAHY, Circuit Judge.

PER CURIAM.

Plaintiff Mortgage Associates, Inc. appeals from a district court order granting summary judgment to defendant, the Administrator of Veterans' Affairs, on plaintiff's claim to recover on a loan guaranty contract executed under the Veterans' Home Loan Guaranty Program (38 U.S.C. §§ 1801–1827). 494 F.Supp. 683. We reverse.

### I

According to those allegations of the complaint admitted in defendant's answer, plaintiff on November 4, 1974, received from veteran Benjamin L. Swanson and his wife Roberta a mortgage note for $21,200 and a mortgage securing the note. The mortgage was a first lien on the Swansons' residence at 1305 Franklin Avenue, Winthrop Harbor, Illinois. A month thereafter, defendant issued plaintiff a Loan Guaranty Certificate under 38 U.S.C. § 1803. This Certificate guaranteed 58.96% of the $21,-200 indebtedness, and in reliance on the Guaranty, plaintiff advanced the Swansons $21,200 to purchase the Winthrop Harbor real estate.

The complaint also shows that plaintiff filed a complaint to foreclose the mortgage in Lake County, Illinois, Circuit Court on June 14, 1977, and that a decree of foreclosure and sale was entered on August 23, 1977. Pursuant thereto, plaintiff caused the premises to be scheduled for sale to the highest cash bidder on September 26, 1977.

Plaintiff notified the Veterans' Administration of the scheduled sale and awaited its written specification of the amount to be bid by plaintiff which, if plaintiff was the successful bidder, would be credited to the Swansons' indebtedness to plaintiff under a Veterans' Administration regulation and Handbook.[1]

Instead of complying with its Lender's Handbook (n. 1 *supra*), the Veterans' Administration on September 22, 1977, orally advised a secretary employed by the Chicago law firm representing plaintiff to have the firm make a $17,650 bid at the September 26th foreclosure sale. A day after the projected sale, defendant wrote plaintiff to bid that amount. The letter was allegedly received by plaintiff in its Milwaukee, Wisconsin, office on September 30, 1977.

At the sale at the Lake County Circuit Court plaintiff successfully bid $24,617.54, the full indebtedness, instead of $17,650, "through inadvertence, mistake or clerical error." The $24,671.54 amount was mistakenly typed by a secretary in the documents used by the law firm's associate when bidding at the foreclosure sale. Thereafter plaintiff notified defendant that it wished to convey the property to defendant by assignment of the certificate of sale. But when defendant learned that plaintiff was the successful bidder for the property at $24,617.54, defendant refused to accept plaintiff's election to sell the property to him for $17,650, denied its claim under the Loan Guaranty, and credited the indebtedness with the $24,617.54, thus wiping out the amount still owed plaintiff on the Loan Guaranty.

In October 1977, the same Lake County court, at plaintiff's request, ordered that the September 26, 1977, judicial sale and order approving it be "vacated and held for naught" and that plaintiff be allowed to

---

* The Honorable Floyd R. Gibson, Senior Circuit Judge of the Eighth Federal Circuit, is sitting by designation.

1. The regulation specified was 38 C.F.R. § 4320 and the defendant's Lender's Handbook paragraph specified was 7073. The latter requires the defendant, after the mortgagee sends it an appropriate notice of sale, to write the mortgagee "the specified amount which shall be credited to the indebtedness of the borrower on account of the value of the security, or * * * that no amount will be specified" (Addendum E to plaintiff's brief).

proceed with another judicial sale. On November 21, 1977, plaintiff became the successful bidder for $17,650, the amount previously specified by defendant. The second judicial sale was approved by judicial order, with distribution entered.

Even though defendant suffered no harm or prejudice through the correction of the error, it refused to honor plaintiff's then $7,212.70 claim under the Loan Guaranty but ultimately accepted the property for $17,650, which was paid to plaintiff on June 26, 1978 (App. 32, 81–87). Consequently, plaintiff initiated this action in January 1979, seeking $8,143.90 with interest under defendant's Loan Guaranty, plus reasonable attorney's fees and costs.[2]

After defendant answered the complaint, plaintiff filed a motion for summary judgment supported by affidavits and exhibits. Thereafter the defendant filed his motion for summary judgment (also supported by affidavits and exhibits), claiming that the first judicial sale discharged the debt of the veteran and relieved the Veterans' Administration of any liability under the Loan Guaranty, and that if it were now required to honor the Guaranty it would have to attempt to proceed against the veteran. The district judge entered a pretrial order which included a statement of all uncontested facts. This statement showed that if the correct sale bid had been made on September 26, 1977, or if that sale had been continued to November 21, 1977, the plaintiff would have been entitled to $8,143.90, the amount sought in the complaint, plus interest, costs and reasonable attorney's fees.

On June 12, 1980, the district court filed a Memorandum Opinion granting defendant's motion for summary judgment and denying plaintiff's motion for summary judgment. The controlling regulatory scheme was succinctly described in the Memorandum Opinion as follows:

"Under the regulatory scheme of the Veterans' Home Loan Program, when an amount is specified by the Administrator, that amount is the minimum amount which the Administrator will credit to the veteran's indebtedness. 38 C.F.R. § 36.-4320. If the lender bids the specified amount at the sale and is the successful bidder, he shall have the option to convey the property to the Administrator. If the property is sold for an amount in excess of the amount specified, the sale price shall be credited to the veteran's indebtedness, and if the lender is the successful bidder he shall not have the option to convey the property to the Administrator. In this manner, the regulations seek to protect the interests of the veteran, the Administrator, and the lender."

When, as here, the mortgagee is the successful bidder for the specified amount, it can retain the security for the specified amount or, as here, elect to convey the security to the Administrator for the specified amount and receive from the Administrator the difference between that amount and the total guaranteed debt (App. 22).

Judge Marovitz observed that under the applicable regulations the Veterans' Administrator is not required to specify the minimum amount to be credited to a veteran's indebtedness as a result of a foreclosure sale, but that under the Veterans' Administration Lender's Handbook, the Administrator, upon receipt of timely notice of a foreclosure sale, which was concededly given here, "shall notify the lender in writing either of the amount specified or that no amount will be specified." As the court noted, the Administrator admittedly did not follow this provision of his Lender's Handbook. If defendant had complied with the requirement in Paragraph 7073 of his Lender's Handbook and sent plaintiff the required written notice of the specified amount to be bid, this error would almost surely have been avoided. Indeed defendant's Director of Loan Guaranty Services criticized defendant's Chicago office for not having given notice of the amount specified

---

**2.** By January 31, 1980, this amount had escalated to $10,366.16 (App. 13), the amount ultimately sought in the court below (App. 1). The plaintiff's briefs in this Court do not request attorney's fees and therefore that prayer in the complaint is held to be waived.

for the first sale directly to plaintiff and for not having confirmed the September 22 telephone conversation amount specified to plaintiff's Chicago law firm's secretary "immediately by registered letter or telegraph to the holder and its attorneys (See M26–4 paragraph 2.19a)" (App. 81). The court correctly concluded that by publishing the Handbook and encouraging firms like plaintiff to rely upon it, the Administrator had become bound by its provisions. However, because plaintiff admitted that its bid at the first sale was also caused by the legal secretary's negligence, the court refused to upset the Administrator's decision to declare his and plaintiff's rights fixed according to the terms of the first sale. Therefore the Administrator's motion for summary judgment was granted. This appeal followed.

## II

38 U.S.C. § 1816 is applicable to this case and provides that in the event of a default in the payment of a loan guaranteed by the Veterans' Administration, the holder of the obligation is to notify the Administrator "who shall thereupon pay to such holder the guaranty not in excess of the pro rata portion of the amount originally guaranteed." As the Supreme Court stated in *United States v. Shimer*, 367 U.S. 374, 383, 81 S.Ct. 1554, 1561, 6 L.Ed.2d 908, "Congress intended the guaranty provision to operate as the substantial equivalent of a down payment in the same amount by the veteran on the purchase price, in order to induce prospective mortgagee-creditors [like plaintiff] to provide 100% financing for a veteran's home." The guaranty is considered the equivalent of a down payment because in the event of a default the lender can look to the loan guaranty to avoid or limit the loss. As *Shimer* construed the statute, the mortgagee can demand to have the amount of guaranty applied against its unpaid claim "on the date of default" (367 U.S. at 378, 81 S.Ct. at 1558). The Court added that the Administrator's regulations are a reasonable accommodation of the statutory ends "first, of making a federal guarantee the substantial equivalent of a down payment,

and, second, of protecting both the Veterans' Administration and the veteran from unnecessary loss on a foreclosure sale" (367 U.S. at 385, 81 S.Ct. at 1562). Here the plaintiff holder of the Loan Guaranty Certificate was unfairly denied the "substantial equivalent of a down payment" because of an inadvertent error in the first Illinois foreclosure sale which was corrected pursuant to Ill.Rev.Stats. (1979) ch. 110, § 50(5).

On September 27, the Veterans' Administration belatedly specified to plaintiff in writing that in connection with the foreclosure sale of the Winthrop Harbor property, the "Administrator requires that there be credited to the indebtedness as the specified amount *$17,650.00*" (App. 21). Under 36 C.F.R. § 36.4320(a), this specification becomes "the minimum amount which should be credited to the indebtedness of the borrower on account of the value of the security to be sold." And under 38 C.F.R. § 36.4323(e), the Veterans' Administrator is then relegated to indemnification from the veteran. As *Shimer* establishes, the regulations of the Veterans' Administration "were intended to create a uniform system for determining the Administration's obligation as guarantor, which in its option would displace state law" (367 U.S. at 377, 81 S.Ct. at 1557), so that defendant cannot resort to Illinois law to support its claim that the first bid extinguished its guaranty obligation.

Defendant also argues that the parties' rights were fixed by the first sale. However, the term "date of sale" is defined in 38 C.F.R. § 36.4320(i)(1) "as the date of the event [*e. g.* sale, confirmation of sale when required under local practice * * *] which fixes the rights of the parties in the property." Because the first sale was vacated for mistake, the rights of these parties were derived from the results of the second sale. Indeed in June 1978 the Administrator purchased from plaintiff for $17,650 the Certificate of Sale issued in connection with the $17,650 second sale. Therefore it would be inequitable to let the Administrator reduce the indebtedness to plaintiff by $24,671.54, the amount bid at the first sale, instead of

by the $17,650 it actually paid plaintiff. Defendant cannot successfully argue that under its Lender's Handbook plaintiff had intended to acquire the property for its own use because even on the date of the first sale, plaintiff elected to convey the property to the Administrator.[3]

To support its contention that the rights of the parties were fixed by the first sale, defendant cites its Manual M26–4 par. 3.12c, but that only covers a "first valid sale," whereas here the first sale was decreed "held for naught." In addition, that provision states "if circumstances warrant, in order to afford the holder the maximum relief permissible under the governing law, Central Office's prior approval may be obtained to purchase the property pursuant to 38 U.S.C. § 1820 for the specified amount." Here to avoid an inequitable windfall, the defendant should have permitted plaintiff to purchase the property at the November 21 sale for the $17,650 it specified in its tardy letter of September 27, and credited that amount against the indebtedness. In any event, Manual M26–4 is described by defendant as "an internal VA document" and therefore is not a regulation binding on lenders (Br. 12, n. 7).

Defendant also relies on his solicitor's opinion No. 122–51 (1951) to support his argument that the rights of the parties were irrevocably fixed by the first sale. However, this opinion was not a part of the regulations or Lender's Handbook, nor was it disseminated for general use to lenders. Furthermore, it does not harmonize with the Home Loan Guaranty Program which, as stated, was to provide the holder of a loan certificate guaranty the "substantial equivalent of a down payment" in order to induce lenders to participate in the program. *United States v. Shimer, supra*, at 374, 385, 81 S.Ct. at 1561–1562. Indeed, as *Shimer* determined, under the Veterans'

Home Loan Guaranty Program, the statute entitled a mortgagee to receive the amount of the guaranty on "demand to have applied against his unpaid claim on the default" 367 U.S. at 378, 81 S.Ct. at 1558; see also 38 U.S.C. § 1819. Congress intended that "there shall be credited against the unpaid debt at least what the Administrator regards as the fair value of the property." 367 U.S. at 380, 81 S.Ct. at 1559. Here that was the $17,650 orally specified by defendant on September 22, so that it is immaterial as to defendant's guaranty that plaintiff's first bid exceeded that sum.

Since defendant accepted and derived benefits from the November 21, 1977 sale, plaintiff is entitled to recover its loan guaranty claim under the same sale. By virtue of our decision, the defendant will be in no different situation than if the initial sale had been done correctly. We are not invalidating any of defendant's regulations or manuals but merely hold that they are partly inapplicable to this unique situation where defendant would otherwise be receiving a windfall from an inadvertent and non-prejudicial mistake.

The judgment of June 12, 1980, is reversed and remanded with directions to enter judgment in favor of plaintiff in the amount of $10,366.16 plus costs.[4]

---

3. Paragraphs 12 and 13 of the complaint, admitted in paragraphs 12 and 13 of defendant's answer (App. 12, 24–25).

   Although defendant contends that plaintiff's current arguments were not raised in the district court, our examination of plaintiff's memorandum of law filed below satisfies us that the issues raised before us by plaintiff are not truly new.

4. If either party challenges this amount of damages, Judge Marovitz is directed to conduct a hearing on the amount of damages alone. The reply brief requests only $10,366.16 and costs.