(Nos. 50544, 50550 cons.

STATE BANK OF EAST MOLINE, Appellee, v. GUS CIRIVELLO *et al.*, Appellants.

*Opinion filed December 4, 1978.*

Joseph R. Rosborough, of Moline, for appellants Don Lundeen and W. Jay Hannan.

Bozeman, Neighbour, Patton & Noe, of Moline (Wendel R. Swan and John W. Robertson, of counsel), for appellants Ernest Huls, George Cook and Edward McDonnell.

Donald B. Hilliker and Edward W. Malstrom, of Isham, Lincoln & Beale, of Chicago (Lytton & Dalton, of East Moline, of counsel), for appellee.

MR. JUSTICE MORAN delivered the opinion of the court:

The State Bank of East Moline (the bank) initiated this action in the circuit court of Rock Island County to enforce a guaranty agreement against 11 of 13 limited partners of Lakeview Estates Limited Partnership. Six limited partners defaulted. The remaining five (defendants) contested the action. Following a bench trial, the trial court ruled in favor of defendants and dismissed the action. The trial court's order expressly found that the

guaranty was conditioned upon the signatures of all 13 limited partners and concluded that failure to obtain all 13 signatures rendered the guaranty incomplete and unenforceable. Pursuant to the bank's post-trial motion, the trial judge entered a supplemental order which found that the bank had imposed the condition and, therefore, further notice of the conditional nature of the guaranty was unnecessary. The appellate court, in a majority decision, reversed. (56 Ill. App. 3d 269.) It remanded the cause with directions to enter judgment against all defendants but one for the full amount of the judgment. As to the one defendant, the appellate court directed that judgment be entered for one-thirteenth of the total obligation. We granted the defendants leave to appeal.

Lakeview Estates was a limited partnership which had 13 limited partners: the 11 persons who were originally party to the action, one person who declared bankruptcy prior to the action, and James Patten. Lakeview Estates desired a loan of $329,000, so, on or about June 20, 1972, 12 of the 13 limited partners signed a document which authorized 3 of the limited partners to transact business with the bank. Each of the 12 signed in the space prepared for his name. The signature of James Patten was missing. Negotiations for this loan and all subsequent financial transactions relative to this case were conducted by Ben H. Ryan, Jr., who was president of the bank, and the three limited partners who were vested with authority to represent Lakeview Estates. The $329,000 loan was never consummated.

Subsequently, the parties negotiated a loan for $65,000 which was to cover the cost of certain work on a mobile home park being developed by Lakeview Estates. Prior to approving the loan, Ryan telephoned Dr. George A. Cook, one of the limited partners. Cook informed Ryan that the loan was needed to meet a cost overrun in the project. He also conveyed to Ryan that he did not want to

be liable for more than his partnership share. Ryan told Cook that all 13 of the limited partners would have to sign a personal guaranty before the loan would be advanced. On or about July 12, Ryan met with the three representatives. He delivered to them printed guaranty forms commonly used by the bank and told them that the loan would not be made unless all 13 limited partners personally guaranteed repayment of the loan.

At meetings held that day or the following day, the representatives conveyed the bank's condition to the other limited partners. Apparently, the representatives advised the others that each was guaranteeing one-thirteenth of the loan. Two identical guaranty forms were subsequently signed, one incorporating nine signatures and the other incorporating three. The guaranties, which, on their face, purport to be continuing, unconditional guaranties of the loan, would, if effective, make all who signed liable, jointly and severally, for the entire obligation. James Patten, the thirteenth limited partner, did not attend the meetings and did not execute a guaranty.

The representatives returned the guaranty forms to the bank, at which time they executed a 180-day promissory note for the $65,000 at 7% interest. Ryan made a notation that the personal guaranties of 12 limited partners were on file and that there was "one more to come." At this time, Ryan also had in his possession the names and addresses of all 13 limited partners and the financial statements of each. James Patten's financial statement indicated that he had a net worth of over $400,000. Despite his knowledge that the one personal guaranty was still outstanding, Ryan advanced the loan to Lakeview Estates. The bank never obtained the thirteenth signature and, prior to granting the loan, never informed the limited partners that James Patten had not guaranteed the obligation. The promissory note was renewed in January of 1973, at 7½% interest, and, again, in July 1973,

at 8½% interest. When the note became due in January 1974, the bank demanded payment. Upon the failure of Lakeview Estates to make any payments, the bank brought the instant action against 11 of the guarantors.

Disposition of this cause requires us to resolve the following two questions: (1) Was the guaranty agreement conditioned upon the signatures of all 13 limited partners? and (2) If the guaranty was conditional, could the bank waive the condition by advancing the loan?

We note at the outset that although this court has not had occasion in the last 35 years to consider a case involving guaranty contracts (*J.R. Watkins Co. v. Salyers* (1943), 384 Ill. 369; *State Bank v. Benzing* (1943), 383 Ill. 40; *Barrett v. Shanks* (1943), 382 Ill. 434), the law relative to guaranties is quite firmly established. The rules of construction applicable to contracts generally apply to contracts of guaranty. (38 Am. Jur. 2d *Guaranty* sec. 70 (1968); 20 Ill. L. & Prac. *Guaranty* sec. 31 (1956); *Hardware Wholesalers, Inc. v. Heath* (1973), 10 Ill. App. 3d 337, 341.) A contract of guaranty may be conditional. (*Belleville Savings Bank v. Bornman* (1888), 124 Ill. 200, 205; 38 Am. Jur. 2d *Guaranty* sec. 21 (1968).) Either the creditor or the guarantors may premise the guaranty upon a condition, though typically the condition is imposed by the guarantors. In either case, the condition becomes a part of the guaranty if it is known and agreed upon by the parties. "A conditional guaranty contemplates, as a condition to liability on the part of the guarantor[s], the happening of some contingent event ***." (38 Am. Jur. 2d *Guaranty* sec. 21 (1968).) A fairly common condition attending guaranties is precisely the one involved in this case: that certain guarantors deliver a signed guaranty subject to the condition that others will also guarantee the debt. (See *Belleville Savings Bank v. Bornman* (1888), 124 Ill. 200, 205; *U.S. v. Everett Monte Cristo Hotel, Inc.* (9th Cir. 1975), 524 F.2d 127, 130-32; 10 Williston, Contracts

sec. 1244 (3d ed. 1967).) Such a conditional guaranty is unenforceable against those who sign unless the other guarantors sign. Restatement of Security sec. 101(1) (1941).

In the case at bar, there is no such condition upon the face of the signed guaranty forms. At trial, defendants sought to show that, contemporaneous to the execution of the written guaranty, the bank represented to the guarantors that the guaranty was conditioned upon the signatures of all 13 limited partners. The trial court properly ruled that the parol evidence rule did not bar the use of extrinsic evidence for the purpose of establishing that the signed guaranty, without the signatures of all the limited partners, was an incomplete instrument and never took effect. (*Belleville Savings Bank v. Bornman* (1888), 124 Ill. 200, 205; *United States v. Everett Monte Cristo Hotel, Inc.* (9th Cir. 1975), 524 F.2d 127, 130; 4 Williston, Contracts sec. 634 (3d ed. 1961).) Upon considering the evidence, the trial court made the factual determination that the guaranty was to become effective only upon the condition that all the limited partners sign it. We may not reverse its factual finding unless we conclude that it is contrary to the manifest weight of the evidence. *John J. Calnan Co. v. Talsma Builders, Inc.* (1977), 67 Ill. 2d 213, 218; *Tomasek v. City of Des Plaines* (1976), 64 Ill. 2d 172, 181; *Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 356.

The bank contends that there is no evidence whatsoever that defendants imposed a condition on the guaranty or that they communicated any condition to the bank. Our examination of the record discloses that this is true, but beside the point. The basis of the trial court's finding was that the bank, through the representations of its president, premised the guaranty upon the condition that all 13 limited partners sign and that the defendants accepted these terms by signing the guaranty forms and delivering the forms to the bank. If there is sufficient

factual support for the trial court to have drawn this conclusion, certainly the law does not require that the defendants reiterate the condition to the bank. The bank disputes that such a conclusion can be justifiably drawn from the facts. It points out that the loan and the guaranty are two separate contractual arrangements, and that Ryan represented only that the loan was conditioned upon the personal guaranties of all 13 limited partners. We find such distinction inconsequential under the facts of the case.

The guaranty, as an obligation collateral to the debt on the loan, would have no effect unless the loan was issued and the principal debt incurred. By representing that the loan would not be advanced without the personal guaranties of all the limited partners, Ryan was also representing that the guaranty would not become effective unless all 13 signed. There was every reason for all the parties involved to assume that the conditional nature of the loan and the conditional nature of the guaranty were indivisible. At the time, the conditional loan and guaranty benefited each of the parties. The bank was attempting to obtain the maximum security acceptable to the defendants and did not intend to authorize the loan with fewer than 13 personal guaranties. The defendants, as limited partners, were hoping to secure a $65,000 loan, but, as individual guarantors, were unwilling to be bound unless all 13 limited partners shared the financial responsibility. The bank and the defendants knew of the considerable financial worth of James Patten. Consequently, we hold that the evidence supports the trial court's finding that the bank premised the guaranty on the condition that all 13 limited partners sign and that the defendants accepted the bank's terms. In so holding, we reject the bank's novel theory that the submission of 12 guaranties constituted a counteroffer to the bank and was accepted when the bank issued the loan. There is no evidence that the limited partners who signed the guaranty forms or the three

representatives who delivered the forms to the bank intended that Patten be excused from guaranteeing the loan. Moreover, Ryan's notation that "one more [was] to come," reveals that the bank did not construe the delivery as a counter offer of 12 guaranties.

Having affirmed the factual finding that the guaranty was conditional, we must address whether the bank could waive the condition by advancing the loan. We hold that it may not. As we have already stated, the condition, though initiated by the bank, contemplated that the guaranty would not become operative unless all 13 limited partners agreed to stand behind the loan. By issuing the loan, the bank materially increased the proportionate liability of those who had signed. In addition, failure to secure James Patten as a co-signed guarantor deprived the defendants of their equitable right of contribution against him. (See *Weger v. Robinson Nash Motor Co.* (1930), 340 Ill. 81, 94; 20 Ill. L. & Prac. *Guaranty* sec. 102 (1956).) When the bank's demand that all 13 limited partners guarantee the loan became a condition to the liability of those who signed the guaranty, it could not be unilaterally waived by the bank.

Accordingly, we reverse the judgment of the appellate court and reinstate the trial court judgment.

*Appellate court reversed;*
*circuit court affirmed.*