TELEGRAPH SAVINGS & LOAN ASSOCIATION, Plaintiff-Appellant, *v.* GUARANTY BANK & TRUST COMPANY *et al.*, Defendants.—(HAROLD COHEN *et al.*, Defendants-Appellees.)

First District (2nd Division)   No. 77-953

Opinion filed December 29, 1978.

Lord, Bissell & Brook, of Chicago (Hugh C. Griffin, Robert C. Bramlette, Jr., and Kenneth R. Wylie, of counsel), for appellant.

Greenberger, Krauss & Jacobs, Chartered, of Chicago (Stephen A. Cohen and Michael P. Boyd, of counsel), for appellees.

Mr. JUSTICE DOWNING delivered the opinion of the court:

This case involves (1) the failure of the trial court to enforce the borrowers' personal guaranty upon default of a $75,000 loan with a deficiency of $20,036.86 after the foreclosure sale of the real estate securing the loan; and (2) the trial court's failure to permit a recovery of unpaid rents due under the leases assigned as additional security for the loan.

Telegraph Savings & Loan Association (hereinafter Telegraph) made

a loan of $75,000 to Guaranty Bank & Trust Company (hereinafter Guaranty) as trustee under Trust Agreement No. 10389. Guaranty executed to Telegraph an installment note dated February 2, 1966, promising to repay the $75,000 loan with interest in monthly installments beginning on April 1, 1966, with final payment due on March 1, 1984. This note was secured by a first mortgage trust deed limiting Guaranty's liability on the note to the property described in the trust deed. Guaranty had leased this property to Merit Mutual Insurance Company (hereinafter Merit Mutual) and C&B Realty Company (hereinafter C&B Realty). As additional security for the loan, Guaranty assigned to Telegraph its right to receive rent payments made by these lessees.

This assignment of rents, recorded on April 12, 1966, in the office of the recorder of deeds of Cook County as Document No. 19793662, transferred Guaranty's right to receive rent payments due under the leases to Telegraph with the right to apply the rents due to any present or future indebtedness or liability of Guaranty to Telegraph. Telegraph's rights under the assignment could not be exercised until after default occurred in any payment secured by the mortgage.

In letters dated April 21, 1966, and addressed to Telegraph, both Merit Mutual and C&B Realty stated that they were in possession of the property secured by the first mortgage as lessees under leases dated November 19, 1965, effective until November 30, 1985; that they had been advised of the $75,000 loan Telegraph made to the lessor of the property, Guaranty; that they had received notice of the terms and conditions of the assignment of rents assigned to Telegraph as additional security for the mortgage debt; that they had not and would not make any payment of rent except as then provided by the lease; and that they would not make any modification of the lease without Telegraph's written direction or consent. Merit Mutual's letter was signed by the president of the company and attested to by the secretary, A. Charles Brody. C&B Realty's letter was signed by Albert C. Brody.

Since the $75,000 loan was secured by property worth approximately $40,000, Telegraph required the personal guaranty of the individual borrowers for $35,000. The individual borrowers, who were the beneficiaries under the trust, Harold Cohen, Lewis Cohen, Albert Brody, and Philip Brody (hereinafter guarantors), signed a rider which was attached to and became part of the installment note made by Guaranty to Telegraph and provided in pertinent part:

> "The Undersigned, for good and valuable consideration, hereby guarantee the prompt and punctual performance of each of the covenants, agreements and conditions of the foregoing Note and the Trust Deed securing it, at all times hereafter until the principal amount of said Note and Trust Deed has been reduced to Forty

Thousand ($40,000.00) Dollars and we do hereby guarantee, promise and agree promptly to pay the first Thirty Five ($35,000.00) Thousand Dollars of the principal of said indebtedness, and interest on the said first Thirty Five Thousand ($35,000.00) Dollars in the manner and in accordance with the terms therein described, but provided that our obligation under this Rider shall cease when the principal amount of said Note and Trust Deed has been reduced to Forty Thousand ($40,000.00) Dollars. We hereby waive all notice, presentment and demand whatsoever and agree to be and remain bound hereunder until said first Thirty Five Thousand ($35,000.00) Dollars of principal, and interest thereon, shall be fully paid, notwithstanding any act or omission of or on the part of the Trustee named in said Trust Deed or the holder thereof."

On April 1, 1973, Merit Mutual and C&B Realty failed to pay rent due under the lease agreement.

On February 1, 1975, a default in the installment payments on the note occurred leaving an amount in excess of $40,000 still due.

In July 1976, Telegraph filed an amended complaint in four counts. Count I sought foreclosure of the trust deed; count II sought enforcement of the guaranty; and counts III and IV sought damages for breach of contract and to recover rents owing from lessees, Merit Mutual and C&B Realty.

Thereafter, Telegraph filed motions for summary judgment against the guarantors and lessees. The lessees, Merit Mutual and C&B Realty, filed cross-motions for summary judgment alleging a failure of consideration between themselves and Telegraph.

On January 6, 1977, the circuit court of Cook County entered an amended decree of foreclosure and sale and reversed ruling on the liability of defendant guarantors for the deficiency, if any, resulting from the sale.

On January 11, 1977, the foreclosure sale was held and the property was purchased by Harold Cohen, one of the guarantors, for $41,000. The sheriff's report of sale and distribution approved by court order entered January 21, 1977, indicated a deficiency of $21,853.60 from the sale.[1] Since the proceeds from the foreclosure sale reduced the deficiency on the loan below $40,000, the guarantors filed a motion to dismiss count II of the amended complaint.

On March 25, 1977, the trial court granted the guarantors' motion to dismiss. On March 29, 1977, the trial court granted the lessees' cross-

---

[1] Although this order was not made part of the record on appeal, both parties in their statements of fact have indicated that in August of 1977, the trial court entered an order approving the receiver's final report and awarded Telegraph an additional $1,816.74, thereby reducing the deficiency from $21,853.60 to 20,036.86.

motions for summary judgment as to Counts III and IV and made its March 25, 1977 order final. On April 6, 1977, Telegraph filed a motion to reconsider the dismissal of count II which the trial court denied. It is from these rulings that Telegraph appeals.

## I.

The first issue to be resolved is whether the proceeds from the foreclosure sale can be applied as payments on the loan according to the terms of the guaranty.

The guarantors contend that the guaranty expressly and unambiguously limited their liability to the first $35,000 of the principal indebtedness and imposed the condition that they would remain liable only until that principal indebtedness was reduced to $40,000. They further contend that they were released from liability when the $41,000 purchase price received as a result of the foreclosure sale reduced the indebtedness on the loan to an amount less than $40,000.

While Telegraph agrees that payments made on the note should be applied in accordance with the agreement between the parties, Telegraph argues that foreclosure sale proceeds cannot be considered the equivalent to payments made in accordance with the terms of the guaranty, and thus the guarantors were not released from liability.

At the outset we note that Telegraph's apparent purpose in obtaining the guaranty on the $75,000 loan secured by property worth approximately $40,000 was to supplement its collateral, thus attempting to secure the entire indebtedness instead of only a portion of it. However, this is not an equitable action and Telegraph is bound by its written agreement with the guarantors. Therefore, we must carefully scrutinize the language of the guaranty and determine the meaning its language imports. In doing so, we are guided by general principles applicable to guaranty agreements.

■▌ Under well-established Illinois law, a guarantor is to be accorded the benefit of any doubt which may arise from the language of the contract; his undertaking is to be strictly construed; his liability is not to be varied or extended beyond its precise terms by construction or implication; and he is bound only to the extent and in the manner and under the circumstances pointed out in his obligation. (*Peirce v. Conant* (1st Dist. 1964), 47 Ill. App. 2d 294, 305, 198 N.E.2d 555.) Where a contract of guaranty is unequivocal in its terms, it must be interpreted according to the language used. (*Jacobson v. Devon Bank* (1st Dist. 1976), 39 Ill. App. 3d 1053, 1055, 351 N.E.2d 254.) But where the express terms of the contract are ambiguous, or there is a question regarding the intention of the parties, the rule of strict construction is not brought into play until the intention is determined from the declarations and conduct of the parties

or from the surrounding circumstances. *Claude Southern Corp. v. Henry's Drive-In, Inc.* (1st Dist. 1964), 51 Ill. App. 2d 289, 300, 201 N.E.2d 127.

Finding no Illinois decisions directly on point, Telegraph cites cases from other jurisdictions for the proposition that where an indebtedness is secured by collateral and also by a partial guaranty, the creditor may apply the proceeds from the sale of the collateral to the unguaranteed portion of the debt, even where the partial guaranty is limited to the first portion of the debt.

In the case of *Alpha Financial Associates v. Dann* (1959), 18 Misc. 2d 73, 186 N.Y.S.2d 554, two defendants guaranteed payment on a loan, each limiting their liability to the first payments made by the principal debtor amounting to $18,000. The principal debtor defaulted after making a $6,000 payment. This $6,000 plus the proceeds from a chattel foreclosure sale amounted to a sum in excess of $18,000 and was paid to the lender. Defendants contended that this sum should have been applied to their guaranty and thus relieve them of liability. The court disagreed finding that payment made from the proceeds of a foreclosure sale of a chattel mortgage could not be deemed to be payment by the debtor according to the terms of the agreement since this payment was made out of the property itself and not paid voluntarily by the debtor.

In *Security Co-op. Bank v. Corcoran* (1937), 298 Mass. 156, 10 N.E.2d 57, payment in full of a mortgage note for $8,000 was guaranteed until $1,600 was paid on the principal of the note. Before the $1,600 was paid, the mortgagors defaulted, so that the balance of the note became immediately due and payable. The mortgagee thereupon caused the mortgage to be foreclosed and credited the net proceeds, amounting to more than $1,600 upon the note. Contrary to the guarantors' contention that the crediting of the proceeds of the foreclosure discharged their liability, the court found that the proceeds were a payment pro tanto for the benefit of both the guarantors and the bank, and did not relieve the guarantors from liability. The court found that if it accepted the guarantors' contention, they could at any time pay the $1,600 and never be compelled to pay the note in full in accordance with the terms of the guaranty. See also *Metropolitan Life Ins. Co. v. 727 Madison Avenue Corp.* (1945), 55 N.Y.S.2d 190.

In *Smith v. Ferris* (1894), 143 N.Y. 495, 39 N.E. 3, defendant guaranteed payment of a $4,000 bond and mortgage "according to its terms until the same is reduced to $3,000." A building on the mortgaged property burned and the lender collected insurance proceeds which reduced the mortgage to $2,700. The court looked to a true interpretation of the guaranty to determine whether the insurance proceeds should be considered a payment on the mortgage and found that the insurance

proceeds were payments out of the property itself and could not be construed as payments on the mortgage according to its terms.

Lastly, in *Kortlander v. Elston* (6th Cir. 1892), 52 F. 180, the debtor purchased a hotel and property from the creditor for $12,000 due in monthly installments. Defendant guaranteed "the punctual payment of $3,000 of principal first to be paid by the terms of the contract \* \* \*." Subsequently, the buildings on the property were destroyed by fire and the creditor received $4,000 in insurance proceeds. Defendant argued that the insurance proceeds should be considered as the first amounts due under the contract, thus releasing him from liability. The court found that the guaranty was given as additional security for the debt supplementing the creditor's security, and that it was the intention of the parties that the creditor use both, if necessary, to satisfy the debt. See also *New Amsterdam Building & Loan Association v. Moyerman* (1928), 95 Pa. Super. 47.

■■ The guarantors in the present case promised to promptly and punctually perform each of the covenants, agreements, and conditions of the note, and to promptly pay the first $35,000 of the principal in the manner and in accordance with the terms of the note and trust deed, but that this obligation would cease when the principal amount was reduced to $40,000. The terms of the trust deed and installment note specified that payments were to be made by the principal debtor. There was no specification as to payment by any other means. On February 1, 1975, a default on the installment payments occurred. Payments up to this time by the principal debtor were not in excess of $35,000, nor did they reduce the principal amount of indebtedness on the note to $40,000. Immediately upon this default, the guarantors became debtors. (*National Bank v. First Wisconsin National Bank* (2d Dist. 1977), 53 Ill. App. 3d 482, 487, 368 N.E.2d 119.) Yet no prompt payment was made. The foreclosure sale did not take place until January of 1977. If we adopt the guarantors' contention, the terms "prompt and punctual" become meaningless. It would always be to the guarantors' advantage not to make payments upon default but to wait until the foreclosure sale. Applying the foreclosure sale proceeds as payments on the loan would render the guaranty taken as additional security illusory and meaningless.

■■ In determining the intent of the parties, we keep in mind our finding in *Fannin State Bank v. Grossman* (1st Dist. 1961), 30 Ill. App. 2d 484, 488-89, 175 N.E.2d 268, wherein we stated:

> "[A] guaranty is a mercantile instrument serving the uses and convenience of commercial intercourse, and should be construed according to what may be fairly said to be the understanding of the parties, as in any other contract."

Based upon the record before us, we find it was the intention of the

parties that the guaranty payments would be voluntary payments in order to insure the lender that the guaranty payments plus the property would protect the loan of $75,000. We do not find that the parties intended that the guaranty payments should come from the property through a forced sale such as a foreclosure. (See *Williams v. Teran, Inc.* (1976), 266 S.C. 55, 221 S.E.2d 526.) Accordingly, we reverse the trial court's order dismissing count II of the amended complaint and remand with directions to enter the proper judgment in favor of Telegraph Savings and Loan Association and against the guarantors.

## II.

The second issue to be resolved is whether the assignment of rents was enforceable by Telegraph, the assignee, against the lessees, Merit Mutual and C&B Realty.

In counts III and IV of its amended complaint, Telegraph characterized the letters received from the lessees, in which they acknowledged the assignment, as new contracts enforceable against the lessees. The lessees asserted that a lack of consideration between them and Telegraph prevented such new contracts. Telegraph replied that consideration was found in the lessees' occupancy of the premises, and, in the alternative, no consideration was necessary. On appeal, Telegraph expanded upon the latter argument contending that an assignee acquired the same rights of an assignor, and if consideration existed between the assignor and the lessees, the lessees could not raise a lack of consideration against the assignee as a defense.

Section 14 of the landlord and tenant act (Ill. Rev. Stat. 1977, ch. 80, par. 14) provides:

> "The grantees of any * * * rents * * *, the assignees of the lessor of any demise, * * * shall have the same remedies * * * for the non-performance of any agreement in the lease, or for the recovery of any rent, * * * as their grantor or lessor might have had if such reversion had remained in such lessor or grantor."

This section grants an assignee the same remedy for recovery of any rent due under the lease as the original lessor might have had if such assignment had not been made. (*Bellows v. Ziv* (1st Dist. 1962), 38 Ill. App. 2d 342, 350, 187 N.E.2d 265.) The letters written by the lessees were not new contracts but rather acknowledgments of the assignment indicating a willingness to comply with its terms. We note that such attornment to the assignee by the lessees is not necessary to vest in the assignee the full rights of the original lessor. (*Forbes v. Star Paper Box Co.* (1st Dist. 1920), 221 Ill. App. 156, 159.) Thus assuming a valid contract existed between Guaranty and the lessees, Telegraph was entitled to the rent payments due after Guaranty defaulted on the loan.

■■ Defendant does not challenge these principles but argues that Telegraph did not raise this theory in the trial court and cannot do so for the first time on appeal. We disagree.

Count I of Telegraph's amended complaint stated that as additional security for the loan, Guaranty assigned its rights as lessor to collect rents due from the lessees; attached to this amended complaint and to Telegraph's motion for summary judgment was a copy of the assignment of rents; and Telegraph's reply to the lessees' affirmative defenses alleged in the alternative that no consideration was needed for the execution of the contracts dated April 21, 1966.

■■ The trial court entered judgment in favor of the lessees on their cross-motions for summary judgment. Summary judgment is properly granted where the affidavits, depositions, admissions, exhibits and pleadings in the case, construed most strictly against the moving party and most liberally in favor of the opponent, show no genuine issue as to any material fact, and the movant is entitled to relief as a matter of law. (Ill. Rev. Stat. 1977, ch. 110, par. 57(3); *Lewis v. Illinois Institute of Technology* (1st Dist. 1977), 50 Ill. App. 3d 418, 420, 365 N.E.2d 1079; *Chisolm v. Stephens* (1st Dist. 1977), 47 Ill. App. 3d 999, 1003-04, 365 N.E.2d 80.) On the record before us and giving full effect to the assignment of rents, we find that the lessees' motions for summary judgment were improperly granted.

Accordingly, we reverse the summary judgments in favor of Merit Mutual Insurance Co. and C&B Realty Co. and remand the cause for further proceedings.

Judgment as to count II reversed and remanded with directions;

Judgment as to counts III and IV reversed and remanded for further proceedings.

STAMOS, P. J., and PERLIN, J., concur.