JAMES JUZWIK *et al.*, Plaintiffs-Appellants, v. EDMUND A. JUZWIK, Defendant-Appellee.

Second District   No. 2—84—1171·

Opinion filed January 27, 1986.

George C. Pontikes and Celeste E. Kralovec, both of Foss, Schuman, Drake & Barnard, of Chicago, for appellants.

Michael T. Caldwell, of Caldwell, Berner & Caldwell, of Woodstock, for appellee.

JUSTICE HOPF delivered the opinion of the court:

Plaintiffs, James and Joyce Juzwik, as heirs of the estate of Genevieve Juzwik, appeal from an order of the circuit court of Lake County which, at the close of plaintiffs' case, entered a judgment against them and in favor of defendant, Edmund A. Juzwik. Plaintiffs had brought suit for an alleged breach of a contract in which defendant guaranteed payment of the principal and interest due to Genevieve Juzwik upon certain obligations. The contract required defendant to act on the guarantee after he received written notice of any default by the primary debtor. On appeal, plaintiffs assert that a lack of formal demand at the time of default in 1971 should not bar their recovery when defendant had actual notice of the default, and that the demand when made was timely.

Defendant was divorced from Genevieve Juzwik in 1969. In keeping with the terms of the decree of divorce, pursuant to which defendant was to transfer to Genevieve certain assets, the parties entered into a memorandum of agreement. The agreement included a schedule of assets, but stated that Genevieve had no knowledge of their value, except as represented by defendant. Therefore, defendant guaranteed to his ex-wife the payment of principal and interest due upon each of the listed assets. The guarantee provision read:

> "In the event of the making of default in respect of the payment of principal or any installment of interest or the performance of any other covenant on the part of the maker upon any of the obligations aforesaid, the said Edmund Juzwik covenants and agrees that he will, within 45 days from and after the furnishing to him on the part of the said Genevieve Juzwik of written notice of the occurrence of such default, directed by registered mail of the United States to his last-known address, provided that the person defaulting has not cured said default and made the said obligation current within said 45-day period, either do or cause to be done at his option, one of the following acts in satisfaction of such default ***.''

The agreement then provided that defendant could cure any default by making a cash payment equal to the face value of the obligation plus accrued and unpaid interest, or by delivering a substitute security of comparable value. Defendant also agreed to pay any reasonable attorney fees incurred in enforcing the agreement.

Among the items listed in the schedule accompanying the agreement was a chattel mortgage on two aircraft and associated items from Canadian Voyageur, Ltd. This item had an unpaid principal balance of $52,000 and provided an annual income of $3,380. Interest

payments were due on the 15th of each month; principal payments of $3,000 were due on the 15th day of June and November in each year, with the final payment of the unpaid balance of principal and interest to be made on December 15, 1974.

In March 1970, defendant assigned to Genevieve Juzwik all of his right, title and interest in the Canadian Voyageur chattel mortgage. Genevieve then assigned all of her interest in the mortgage to a trust at the First National Bank of Lake Forest.

The last time Canadian Voyageur made a payment toward principal was in June 1971, and the last payment of interest was in August 1971. On May 1, 1972, a trust officer of the First National Bank of Lake Forest wrote defendant in an attempt to determine the current balance due on the chattel mortgage. The bank had been advised by the attorney for Canadian Voyageur that defendant had received seven overdue payments owed on the chattel mortgage, and the bank sought by its letter to ascertain if this was in fact the case. Defendant returned the bank's letter with handwritten notations indicating that he did not verify the payments listed by the bank. Defendant stated that the payments he received from Canadian Voyageur were made for a different purpose and did not in any way apply to the mortgage. Defendant also stated:

> "You must have received a November payment. If not, why steps have not been taken to collect same or why was I not notified before this. You also verified this mtg [sic] originally. If payments are not made as required you should take steps to foreclose mtg [sic]. I refuse to be a party to this in as much [sic] as you failed to advise me in proper time of any default."

Following this exchange of correspondence, defendant took no action with respect to the mortgage because, he testified, he had no formal notice of any default.

On February 5, 1975, an attorney for Genevieve Juzwik wrote to defendant, advising him that the chattel mortgage, calling for the payment of the balance of principal and interest on January 1, 1975, was in default. The attorney demanded that defendant either make a cash payment equal to the face value of the mortgage plus accrued and unpaid interest, or deliver a substitute security of comparable value. Defendant testified that he had suffered a stroke at about this time, and did not recall whether he had received this letter. On November 22, 1978, Mrs. Juzwik's attorney again wrote to defendant regarding the chattel mortgage. This letter indicated that defendant had made a response to the attorney's 1975 letter.

On December 1, 1978, defendant responded to the most recent

correspondence as follows:

> "In reply to your letter of Nov. 22nd, I direct your attention to my letter in response to yours of 2/5/75 which referred to the provision in the decree that I must be notified within 30 days of any. default. This was not done in sufficient time so that steps could be taken to take possession of the mortgaged equipment; in this case aircraft.
>
> By the time your office notified me, the equipment was removed and could not be repossessed. Furthermore, the Canadian mortgage law requirement was not met by your office to protect the lender or mortgage holder.
>
> It would appear that the trustee and your office have been negligent and should be held responsible by your client for any loss. My attorneys have advised me that I am not in any way obligated in this matter."

Defendant testified that he had visited Canada following his receipt of the November 1978 letter and had determined that the collateral securing the chattel mortgage had vanished. In his opinion, the collateral had had a value of approximately $150,000. Genevieve Juzwik died on September 27, 1979, and plaintiffs maintained this action as the heirs of her estate.

Defendant moved for a finding and judgment in his favor at the close of plaintiffs' case pursuant to section 2—1110 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1110). The trial court granted the motion, finding that "Genevieve Juzwik, or the bank as her trustee \*\*\*, had an obligation to immediately notify the husband." The court observed that no demand for a substitution of cash or securities was made upon defendant until 1975, although the trustee was aware sometime in 1970 and 1971 that there was a difficulty with the chattel mortgage. Plaintiffs' motion for reconsideration was denied, and plaintiffs filed a timely notice of appeal.

The trial court's findings indicate that the court granted judgment for defendant because plaintiffs had failed to timely notify defendant of default by the primary debtor. Plaintiffs argue that their recovery should not be barred because defendant had actual notice of the default in 1972, and the formal notice and demand in 1975 were made in a timely fashion.

■ In ruling on a motion for judgment at the close of a plaintiff's case, the court in a nonjury case is to determine whether the plaintiff has made out a *prima facie* case. If he has not, the court should immediately grant the motion and enter judgment in defendant's favor. If plaintiff has made out a *prima facie* case, the court must consider

all the evidence, including that favorable to defendant, pass on the credibility of witnesses, draw reasonable inferences from the testimony, and generally consider the weight and quality of the evidence. If this weighing process results in the negation of evidence needed for plaintiff's *prima facie* case, the court should grant defendant's motion. If, on the other hand, the *prima facie* case remains intact, the court should deny the motion and proceed with the trial. (*Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 154-55, 407 N.E.2d 43; *Julian v. Spiegel* (1985), 135 Ill. App. 3d 458, 481 N.E.2d 903.) On appeal, the decision of the trial court should be upheld unless it is contrary to the manifest weight of the evidence. (*Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 154-55, 407 N.E.2d 43.) In the case now before us, the evidence on the issue of notice does not negate plaintiffs' *prima facie* case.

■ Plaintiffs asserted that the defendant had actual knowledge due to the May 1, 1972, letter and he could have discovered other facts through diligent inquiry. He would have had the same opportunity to act as a formal demand would have provided. The court concluded that plaintiffs were obligated to notify defendant and that neither defendant's actual knowledge in 1972, nor the formal notice given in 1975, four years after default had occurred, constituted reasonable notice. The court held that plaintiffs' failure to give the required notice completely barred their recovery. Our own review of the memorandum of agreement, however, persuades us that its terms were unconditional and did not require that notice be given as a condition precedent to defendant's liability on the guarantee. The agreement called only for defendant to take one of two specified actions to cure any default within a 45-day period after receipt of written notice. Written notice was undisputedly given in February of 1975. At that time defendant was obligated to perform the guarantee. It is uncontested that defendant took no action.

■ Even if plaintiffs had been obligated to give notice, it has been held that failure of proof on the question of proper notice is irrelevant in determining whether the claimant has established a *prima facie* case. (*Mid-City Industrial Supply Co. v. Horwitz* (1985), 132 Ill. App. 3d 476, 484, 476 N.E.2d 1271, 1277; *In re Estate of Klink* (1941), 310 Ill. App. 609, 35 N.E.2d 684.) In a suit brought upon a collateral or continuing guarantee, the plaintiff establishes a *prima facie* case by proof of the original indebtedness, the debtor's fault and the making of the guarantee. *Mid-City Industrial Supply Co. v. Horwitz* (1985), 132 Ill. App. 3d 476, 483, 476 N.E.2d 1271, 1277.

Failure to give notice is, however, a defense in a suit brought upon a collateral or continuing guarantee, such as the guarantee in

this case.

> "While the general rule is that a guarantor is entitled to reasonable notice of the default of the principal debtor, the right to this notice is not absolute. [Citations.] Failure to notify a guarantor of the debtor's default has no other effect than to afford him a defense to the extent of the loss or damage sustained as a result of such failure. [Citation.] This defense must be specially pleaded by the guarantor and the plea and proof must also declare and show that the guarantor sustained a loss or damage resulting from the lack of notice. [Citation.] A creditor is not required to give a notice of default to a guarantor where the guarantor has notice from an independent source. [Citation.]" *Mid-City Industrial Supply Co. v. Horwitz* (1985), 132 Ill. App. 3d 476, 483, 476 N.E.2d 1271.

Thus, failure to give notice is a defense, at least insofar as such failure may have caused loss to defendant. Evidence of such loss in this case would have been a proper basis for denial or reduction of recovery. However, there was no evidence offered to indicate that the collateral had become impaired as of February 1975 when notice of the default was formally given. The evidence showed only that nothing remained of the collateral as of defendant's visit to Canada in November 1978. We regard this evidence as inadequate to negate plaintiffs' *prima facie* case for collection on the guarantee settlement.

■ Since plaintiffs' *prima facie* case was not negated by evidence of a proper defense, and defendant, not plaintiffs, had the burden of proof regarding that defense (*Mid-City Industrial Supply Co. v. Horwitz* (1985), 132 Ill. App. 3d 476, 483, 484, 476 N.E.2d 1271), defendant should be given the opportunity to show any loss he may have sustained as a result of plaintiffs' failure to notify until several years after default occurred. We conclude that the judgment in favor of defendant at the close of plaintiffs' case was improper. The trial should have continued. *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 155, 407 N.E.2d 43.

■ It should be noted that plaintiffs argue that defendant was actually aware of Canadian Voyageur's difficult financial circumstances as of May 1972, the date of the letter indicating that certain payments due on the mortgage in 1970 had not been received. They assert that defendant should be liable as of the time he had actual notice. The trial court found against plaintiffs on this issue and we agree. The aforementioned letter did not formally demand performance of the guarantee or mention that Canadian Voyageur had ceased making payments altogether after August 1971, but only inquired if

defendant had received seven designated payments due toward the principal in 1970. As the bank apparently made no response to defendant's answer denying his own receipt of these payments we find an inadequate evidentiary basis upon which the trial court could have found that the May 1972 letter provided actual notice of the default to defendant or, as plaintiffs further urge, imposed upon defendant a duty to inquire regarding the status of the mortgage.

In keeping with the views set out above, the judgment of the circuit court of Lake County is reversed and the cause remanded for proceedings to allow defendant to present his case.

Reversed and remanded.

REINHARD and UNVERZAGT, JJ., concur.