EXCHANGE NATIONAL BANK OF CHICAGO, Plaintiff and Counter-defendant-Appellant, v. SAMUEL N. BERGMAN, Defendant and Counter-plaintiff-Appellee.

First District (3rd Division) No. 85—1521

Opinion filed March 11, 1987.

Francis X. Grossi, Jr., and Rachel F. Best, both of Katten, Muchin, Zavis, Pearl & Galler, of Chicago, for appellant.

Donald J. O'Brien, Sr., of Chicago (Albert E. Arnstein and Michael W. Rathsack, of counsel), for appellee.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff and counterdefendant, Exchange National Bank of Chicago, loaned $85,000 to Herbert Geist, who is not a party to this suit. Defendant and counterplaintiff, Samuel N. Bergman, guaranteed the loan. After Geist declared bankruptcy, Exchange set off Bergman's bank accounts and brought this suit to recover the balance, alleging that the $85,000 loan had not been repaid by Geist. Bergman filed a counterclaim, alleging that the loan had been repaid by Geist and that Exchange wrongfully seized money from Bergman's bank accounts. The trial court entered summary judgment in favor of Bergman on count I of the counterclaim. On appeal, Exchange contends that the existence of genuine issues of material fact precludes summary judgment.

On November 24, 1970, Geist and a partner, Bertram Schwartz, borrowed $85,000 from Exchange for a construction loan application fee to Ford Motor Credit Corporation. Geist and Schwartz signed a demand note and Bergman signed a guaranty on the reverse side of the note. Ford later declined to make the construction loan and returned the $85,000 application fee to Geist. Geist endorsed the reverse side of the refund check from Ford and gave the check to Ex-

change. On February 22, 1971, Exchange issued a cashier's check for $85,000 payable to itself.

Geist had also applied for a construction loan from Anchor Savings Bank. On February 7, 1971, Geist withdrew the Anchor application fee of $90,000 from the corporate account of Herbert Geist & Associates, Inc. As of March 2, 1971, an overdraft existed in the corporate account. On that day, Exchange deposited into the Geist corporate account the $85,000 cashier's check which it had issued to itself nine days earlier.

Eight years later, Exchange seized $112,005.21 from Bergman's checking and savings accounts and applied the funds against the allegedly unpaid $85,000 loan and accrued interest. Exchange filed suit to collect the remainder of the funds, and Bergman counterclaimed for various funds. Count I of the counterclaim sought the repayment of the funds taken from Bergman's bank accounts. Subsequently, the trial court entered summary judgment in favor of Bergman as to count I of the counterclaim in the amount of $112,005.21.

■■ ■ Where the pleadings, depositions, affidavits, exhibits, and admissions on file reveal that no genuine issues of material fact exist, the moving party is entitled to summary judgment as a matter of law. (*Burks Drywall, Inc. v. Washington Bank & Trust Co.* (1982), 110 Ill. App. 3d 569, 442 N.E.2d 648; *Mid States Vending Service, Inc. v. C.A.P., Inc.* (1977), 45 Ill. App. 3d 947, 360 N.E.2d 448.) In determining if a genuine issue of material fact remains, inferences may be drawn from the undisputed facts. If fair-minded persons could draw different inferences from the facts, a triable issue exists. (*Peirce v. Conant* (1964), 47 Ill. App. 2d 294, 198 N.E.2d 555.) Exchange maintains that genuine issues of material fact exist regarding whether the $85,000 loan was repaid by Geist, whether Bergman knew the $85,000 refund check was not used to retire the note, and whether it was consistent with the purpose of the original loan to use the $85,000 for the successful loan commitment from Anchor.

■ The meaning of a guaranty agreement is a matter of law to be determined by the court. (*Dee v. Bank of Oakbrook Terrace* (1980), 84 Ill. App. 3d 1022, 406 N.E.2d 195.) Here, the language of the note and the accompanying guaranty state that repayment was to be made within 90 days, absent any extension of time granted by Exchange. The language of the instrument, however, does not state the underlying purpose of the transaction. Where the express terms of the guaranty are ambiguous, or there is a question regarding the intention of the parties, the intention must be determined from the

declarations and conduct of the parties or from the surrounding circumstances. *Telegraph Savings & Loan Association v. Guaranty Bank & Trust Co.* (1978), 67 Ill. App. 3d 790, 385 N.E.2d 97.

In November 1970 Geist borrowed $85,000 from Exchange, to be repaid within 90 days, and Bergman guaranteed that loan in accordance with the terms of the note. The $85,000 was used by Geist as a construction loan application fee to Ford. When the application was rejected, Ford returned the fee to Geist, who endorsed the check and delivered it to Exchange. Exchange issued a cashier's check, payable to itself, in the amount of $85,000. Payment by the debtor discharges the guarantor. (*Du Quoin State Bank v. Daulby* (1983), 115 Ill. App. 3d 183, 450 N.E.2d 347.) Geist's repayment of the $85,000 loan to Exchange discharged Bergman's obligation as guarantor. The fact that Geist was indebted to Exchange for other loans or overdrafts does not alter this finding, nor does the existence of such other loans or overdrafts raise inferences which preclude summary judgment.

Exchange asks this court to extend the scope of the agreement which guaranteed the $85,000 Ford application fee to cover the $90,000 Anchor application fee. Guaranty agreements are to be strictly construed in favor of the guarantor. (*Farmers State Bank v. Doering* (1980), 80 Ill. App. 3d 959, 400 N.E.2d 705.) A guarantor is not liable for anything which he did not agree to, and if the creditor and principal have entered into an agreement materially different from that contemplated by the instrument of guaranty, the guarantor will be released. (80 Ill. App. 3d 959, 400 N.E.2d 705.) A guarantor is given the benefit of any doubt which may arise from the language of the contract; his understanding is strictly construed: his liability may not be varied or extended beyond its precise terms by construction or implication; and he is bound only to the extent and in the matter and under the circumstances pointed out in his obligation. *Lawndale Steel Co. v. Appel* (1981), 98 Ill. App. 3d 167, 423 N.E.2d 957, quoting *Telegraph Savings & Loan Association v. Guaranty Bank & Trust Co.* (1978), 67 Ill. App. 3d 790, 385 N.E.2d 97.

The record reveals that Geist submitted a $90,000 loan application fee to Anchor. Subsequently, Exchange chose to use the $85,000 it received as a payment from Geist to partially cover the $90,000 overdraft in Geist's corporate account. This was not merely an extension of the 90-day period in which repayment of the $85,000 Ford loan application fee was due. The $90,000 Anchor application fee involved a different loan application made on a different date to a different company with a different sum of money which was taken

from a different bank account. Nothing in the record indicates that Bergman intended to guarantee this second transaction. The guaranty was not for "any and all indebtedness" incurred by Geist. (Compare *Dee v. Bank of Oakbrook Terrace* (1980), 84 ill. App. 1022, 406 N.E.2d 195.) When Geist returned the $85,000 to Exchange, the application and its $90,000 fee had already been sent to Anchor. Under these circumstances, we conclude that Bergman was released from his guaranty and that Exchange improperly set off the funds from Bergman's bank accounts.

■ Exchange relies upon inferences which might be drawn from the fact that Bergman was an Exchange director and thus should have known the $85,000 loan was outstanding and the fact that Bergman ultimately might have benefitted from the Anchor construction loan to Geist. These facts are unrelated to the essential elements of the cause of action stated in count I of the counterclaim, and thus they are immaterial in determining whether summary judgment was proper. The existence of factual questions will not preclude summary judgment unless the facts are material to the litigation. (*Burks Drywall, Inc. v. Washington Bank & Trust Co.* (1982), 110 Ill. App. 3d 569, 442 N.E.2d 648.) Facts regarding Bergman's knowledge of the status of the loan, regardless of how sharply controverted, will not warrant the denial of a motion for summary judgment. See *Mid States Vending Service, Inc. v. C.A.P., Inc.* (1977), 45 Ill. App. 3d 947, 360 N.E.2d 448.

For the reasons stated, the judgment of the circuit court of Cook County granting summary judgment in favor of Samuel Bergman on count I of his counterclaim is affirmed.

Judgment affirmed.

WHITE and FREEMAN, JJ., concur.