**IRVING TANNING COMPANY, Plaintiff,**

v.

**AMERICAN CLASSIC, INC., and Uni–Fin Corporation, Defendants.**

No. 89 3686.

United States District Court, N.D. Illinois, E.D.

April 5, 1990.

Dan Brusslan and Angela M. Kalamaras, Fischel & Kahn, Ltd., Chicago, Ill., for plaintiff.

Dominic M. Serpico, Riverside, Ill., Julie L. Murphy, Levin & Funkhoufer, and Alan M. Depcik, Chicago, Ill., for defendants.

## ORDER

NORGLE, District Judge.

Before the court is the motion of defendant, Uni–Fin Corporation for summary

judgment on the claim of plaintiff, Irving Tanning Company.

Rule 56(c) of the Federal Rules of Civil Procedure provides that a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A plaintiff cannot rest on mere allegations of a claim without any significant probative evidence which supports his complaint. *Id.; see First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims and defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Accordingly, the nonmoving party is required to go beyond the pleadings, affidavits, depositions, answers to interrogatories and admissions on file to designate specific facts showing a genuine issue for trial. *Id.* Local Rule 12(*l*), (m) also places additional burdens upon the movant and respondent with respect to a motion for summary judgment.

Irving filed a two count complaint against American Classic, Inc., an alleged trade debtor, and Uni–Fin, American's guarantor. Uni–Fin's motion for summary judgment asserts that Irving's breach of a notice provision in the Letter of Guarantee (the "Guarantee"), compliance with which was a condition precedent to Uni–Fin's obligations under the Guarantee, entitles it to judgment as a matter of law.

Specifically, the Guarantee requires Irving to, "within fifteen days after due date of any unpaid invoice guaranteed herein, notify UFC [Uni–Fin] at 200 W. Adams Street, Chicago, Illinois 60606, by registered mail of the failure of American to pay Irving said invoice." The Guarantee contemplates sales from Irving to American with payment terms of net thirty days. The terms of all invoices were 30 days net—the balance of the invoice was due 30 days from invoice date. Thus, according to Uni–Fin, under the terms of the Guarantee, notice must be sent by registered mail within 45 days of the invoice date (15 days from the invoice due date, which was 30 days after the invoice date).

It is undisputed that Irving failed to provide notice of American's failure to pay on each of the invoices involved until more than forty-five days after each invoice date. In addition, Irving did not send the notice by registered mail. Instead, it was sent by Federal Express.

Irving asserts that Uni–Fin's motion should be denied on a procedural basis for noncompliance with Local Rule 12(*l*). As for the substance of the motion, Irving, under its interpretation of the Guarantee, contends genuine issues of material fact exist. Irving focuses on the following language in the Guarantee: "UFC [Uni–Fin] does hereby irrevocably guarantee to Irving payment for all leather delivered to and accepted by American." Irving argues that, just as Uni–Fin only guaranteed payment for goods accepted by American, invoices issued by Irving did not became "due" until acceptance by American of the goods shipped under the invoice. It then relies upon the alleged existence of a factual dispute over when American accepted the goods to create a genuine issue over the material fact of the respective invoices' "due date"—the date from which the notice period ran. Finally, Irving contends that Uni–Fin waived the notice defense when it failed to assert it in its initial communication to Irving in response to Irving's demand under the Guarantee.

Local Rule 12(*l*), (m) performs the important function of forcing the parties to focus on the facts material to a claim or defense as they are supported by the record. Compelling the parties to address the factual issues, or lack thereof, in a straight forward manner presents the matter to the

court in an organized fashion. This court has not been hesitant to resolve a summary judgment motion based upon failure to comply with Local Rule 12(m). *See Bell, Boyd & Lloyd v. Tapy*, 896 F.2d 1101 (7th Cir.1990). After all, the Local Rule 12(m) expressly provides that failure of a responding party to submit a complying response will result in the material facts set forth in the movant's 12(*l*) statement being deemed admitted. From this result, granting the summary judgment motion may necessarily follow. However, failure to comply with 12(*l*) is only "grounds" for denial of the motion.

■ Here Uni–Fin has not fully complied with Local Rule 12(*l*). Yet, it has submitted a statement of short numbered paragraphs with specific references to supporting materials. To this Irving has been able to formulate a similarly structured response. Given that this dispute revolves around the interpretation of a single provision in a one page agreement and has been presented to the court in an organized fashion, to deny Uni–Fin's motion, only to have it file a nearly identical but complying one, would accomplish no real purpose at the expense of both judicial economy and the lives of an extra tree or two sacrificed to the paper mills. The court will not enforce Local Rule 12(*l*) "to the hilt", *Bell, Boyd & Lloyd*, 896 F.2d at 1103 (7th Cir.1990), and deny Uni–Fin's motion. However, counsel for Uni–Fin is admonished to comply with the Local Rules in the future.

■ The meaning of an unambiguous guarantee is a matter of law to be determined by the court.[1] *Exchange Nat'l Bank of Chicago v. Bergman*, 153 Ill. App.3d 470, 106 Ill.Dec. 445, 446; 505 N.E.2d 1236, 1237 (1st Dist.1987); *Milwaukee Cheese Co. v. Cornerstone Inn, Inc.*, 142 Ill.App.3d 840, 97 Ill.Dec. 28, 30, 492 N.E.2d 231, 233 (2d Dist.1986). "[W]here the language of a guaranty is unambiguous, it will be given its natural and ordinary meaning as with any other contract." *Heritage Bank of University Park v. Brutti*, 141 Ill.App.3d 107, 95 Ill.Dec. 454, 455, 489 N.E.2d 1182, 1183 (3d Dist.1986); *see Ford Motor Credit Co. v. Solway*, 825 F.2d 1213 (7th Cir.1986) ("A guaranty is to be interpreted according to the standards that govern the interpretation of contracts in general; the court's task is to effectuate the intent of the parties"); *United States v. Crispen*, 622 F.Supp. 75, 78–79 (N.D.Ill. 1985); *Milwaukee Cheese*, 97 Ill.Dec. at 30, 492 N.E.2d at 233 (if unambiguous, a guarantee must be enforced as written). However, because "the guarantor is a favorite of the law ... the extent of his liability is not to be extended by construction." *Brutti*, 95 Ill.Dec. at 454, 489 N.E.2d at 1182. Thus, "a guarantor is to be accorded the benefit of any doubt which may arise from the language of the contract." *A.D.E. Inc. v. Louis Joliet Bank and Trust Co.*, 742 F.2d 395, 396 (7th Cir.1984) *quoting Telegraph Savings & Loan Ass'n v. Guaranty Bank & Trust Co.*, 67 Ill.App.3d 790, 794, 24 Ill.Dec. 330, 333, 385 N.E.2d 97, 100 (1st Dist.1978); *see also Advance Process Supply Co. v. Litton Industries Credit Corp.*, 745 F.2d 1076, 1079 (7th Cir.1984) ("we must construe the guarantee strictly in favor of the guarantor"); *Bergman*, 106 Ill.Dec. at 447, 505 N.E.2d at 1238.

Just as with any contract, obligations under a guarantee may be subject to conditions established by the parties. *See State Bank of East Moline v. Cirivello*, 74 Ill.2d 426, 24 Ill.Dec. 839, 840, 386 N.E.2d 43, 45 (1978); *Newman–Green, Inc. v. Alfonzo-Larrain R.*, 605 F.Supp. 793, 799 (N.D.Ill. 1985); *Mortgage Associates, Inc. v. Cleland,* 494 F.Supp. 683, 685 (N.D.Ill.1980) *rev'd other grounds*, 653 F.2d 1144 (7th Cir.1981). Although an unconditional guarantor is not, as a matter of law, absolutely entitled to notice of the principal's default, *Juzwik v. Juzwik*, 140 Ill.App.3d 644, 94 Ill.Dec. 926, 929–30, 488 N.E.2d 1319, 1322–23 (2d Dist.1986), a guarantee may express-

---

**1.** The Guarantee does not contain a choice of law provision. The parties, without directly addressing the issue, effectively consent to Illinois law by assuming that Illinois law governs this dispute and briefing accordingly. Illinois does not lack a reasonable relationship to this action. Both American and Uni–Fin are Illinois corporations and the goods, payment for which was guaranteed, were shipped to Illinois.

ly provide that the guarantor's obligations are conditioned upon notice.

■ The court agrees with Uni–Fin that proper notice was a condition to its obligations under the Guarantee and that the fifteen day notification period under the Guarantee began to run thirty days from the invoice date. Uni–Fin agreed to guarantee payment of Irving's invoices to American "but only upon the terms and conditions ... set forth" in the Guarantee. One of the conditions was timely notice from Irving of American's failure to pay on an invoice by the due date on the invoice. Unlike the notice provision of the guaranty in *Juzwik*, which merely required the guarantor to satisfy his obligations under the guarantee within 45 days of notice from the creditor-beneficiary of the principal-debtor's default, 94 Ill.Dec. at 927, 488 N.E.2d at 1320; the Guarantee, in addition to requiring Uni–Fin to satisfy its obligations under the Guarantee within a specific period after notice from Irving, also requires that Irving provide that notice within a specific period after the due date of its invoices. Where the notice provision in the *Juzwik* guarantee only imposed a duty upon the guarantor, the Guarantee's notice provision imposed duties upon both the beneficiary and the guarantor. Moreover, Irving's performance of its duty was a condition to Uni–Fin's duty. It is undisputed that Irving did not provide notice within the required period for any of the sums due under the invoices in question.

Irving's interpretation of the Guarantee simply confuses a possible defense of Uni–Fin—that the goods had not been accepted[2]—with Irving's duties under the notice provision. What Irving may find "troubling" is that the terms of the Guarantee require it to notify Uni–Fin of American's failure to pay within the terms of an invoice even if, although the shipment covered by the invoice had been delivered, American had yet to accept or even had rejected

the goods and ultimately might not owe any money to Irving. In other words, the Guarantee requires that Uni–Fin receive notice of the possibility of default, rather than the actuality. On one hand, it may seem premature and inefficient to require notice to the guarantor of the principal-debtor's "payment default" under circumstances when a duty to pay may have yet to arise. This results in notice to the guarantor in many instances where its obligations under the guarantee may never arise.

Yet, notice to guarantor triggered solely by passage of an invoice due date has at least one advantage to which the guarantor, having bargained for, is entitled. The guarantor learns of the principal-debtor's delay in payment as soon as there is the possibility that it may incur liability under the guarantee. Thus, the guarantor has time to investigate and to "coax" the principal-debtor into performing. The Guarantee gives Uni–Fin an additional ten day period, after notice of American's default, to perform its obligations under the Guarantee. Therefore, an opportunity to inquire into nonpayment as soon after delivery as possible is crucial because it increases the likelihood that Uni–Fin may resolve any dispute before the ten day period expires and Uni–Fin is required to make payment under the Guarantee.[3]

There is, of course, another advantage to the notice provision in the Guarantee. Requiring notice to the guarantor within a specific period after the invoice due date, but before the creditor-beneficiary of the Guarantee may believe that the principal-debtor will not actually perform and that resort to the guarantor is necessary, increases the likelihood that the creditor-beneficiary will not send timely notice. This has obvious benefits for the guarantor. In any case, the language specifying the timing of the notice required under the Guar-

---

**2.** Absent waiver, *see Continental Ill Nat. Bank & Trust Co. v. Stanley*, 606 F.Supp. 558, 562, 63 (N.D.Ill.1985), a guarantor may generally assert defenses of the principal-debtor.

**3.** On the other hand, Uni–Fin, after investigation, might determine that American did not owe Irving any money on a given invoice and that it could let the ten day period expire without fear of risking liability under the Guarantee.

antee is clear and unambiguous and Irving did not comply.

In the alternative, even had the language of the Guarantee with respect to the timing of the notice of American's nonpayment been reasonably subject to the interpretation urged by Irving, it still would not have provided proper notice. The Guarantee specifically provides that notice must be sent by registered mail. It is undisputed that Irving sent its notice by Federal Express. While Irving may see this deviation from the terms of the Guarantee as trivial, guarantor's are entitled to strict construction of the unambiguous terms of a guarantee.[4] Uni–Fin can be "bound only to the extent and under the circumstances pointed out in its obligation" *Bergman*, 106 Ill.Dec. at 447, 505 N.E.2d at 1238. The "circumstances" required under the Guarantee have not occurred.

Accordingly, Uni–Fin's motion for summary judgment is granted.

IT IS SO ORDERED.

---

4. There has been no express waiver of notice by Uni–Fin. Neither do the terms of the Guarantee require Uni–Fin, on peril of waiver, to notify Irving of the defects in its notice within any specific period. Irving has cited no cases which support its waiver argument.